[Civ. No. 17865.  First Dist., Div. Two.  Mar. 25, 1959.]

FRANK IUSI, Respondent, v. NEIL CHASE, Appellant.

[Civ. No. 17866.  First Dist., Div. Two.  Mar. 25, 1959.]

EDWARD L. THOMPSON, Appellant, v. NEIL CHASE, Respondent.

Walter E. Rankin, Jr., for Appellant in Civ. No. 17865 and Respondent in Civ. No. 17866.

Johnson, Thorne, Speed & Bamford for Appellant in Civ. No. 17866 and Respondent in Civ. No. 17865.

DRAPER, J.—A claimed agreement of real estate brokers for a "three-way split" of commissions has led to this tripartite litigation. Iusi, the listing broker, and Thompson, the middleman or broker's broker, brought separate actions against defendant Chase, the procuring broker. The actions were consolidated and tried to the court without a jury. Judgment was entered in favor of Iusi against Chase for 50 per cent of the commission already paid to Chase, and declaring that half of the remaining commissions, as paid to Chase, should belong to Iusi. In Thompson's action judgment was in favor of defendant Chase, on the theory that Thompson must look only to Iusi for a commission. Defendant Chase appeals from the judgment in favor of Iusi, and plaintiff Thompson appeals from the judgment denying him recovery.

Each plaintiff's original complaint was on a common count for money had and received. By amended complaint filed to conform to proof, Iusi alleged an oral agreement to pay him 60 per cent of any commission received by Chase, alleging also that he "has . . . reduced his claim . . . to 50%." The amended complaint sought half the commissions already paid, as well as declaratory judgment awarding a like share of commissions later paid. The evidence shows that the owner of a tract of land orally granted Iusi the exclusive right to act as broker in its sale. Iusi asked Thompson to interest other brokers telling him that the commission would be divided 60 per cent to Iusi and 40 per cent to the broker who procured a sale, with that broker to pay Thompson whatever share Thompson was to receive.

Thompson told Chase of the availability of this property. The evidence conflicts as to what was said about division of commissions. Thompson testified several times that the agreement was for a "three-way split," but also testified that he told Chase of the 60 per cent-40 per cent provision. Chase testified that Thompson asked for a three-way split, without specification of the shares. Under these circumstances, the court could justifiably determine that Chase agreed to divide the commission, but that no percentages were agreed upon. The court could look to custom to fill this gap in the oral agreement. There was evidence that custom of the business calls for equal division between listing and procuring brokers, with the former responsible for satisfying the claim of the

middleman. Chase defended upon the ground that custom required no division, unless the listing broker had a written exclusive agreement. Other evidence of the custom contradicted this view, and the conflict was for the trial court to resolve.

Appellant Chase first contends that recovery is barred by the statute of frauds. Of course, an agreement "authorizing or employing an agent or broker to purchase or sell real estate" is invalid unless written. (Civ. Code, § 1624, subd. 5.) However, the long-established rule is that this provision does not extend to agreements between brokers. (*Gorhan* v. *Heiman*, 90 Cal. 346, 358 [27 P. 289].) In general, this rule does not apply unless one of the brokers has a binding written contract with the principal. (*Aldis* v. *Schleicher*, 9 Cal.App. 372 [99 P. 526].) But where the commission has in fact been paid by the owner to one broker, even though there was no written contract between them, the second broker can recover upon his oral contract with the first broker. (*Johnston* v. *Porter*, 21 Cal.App. 97 [131 P. 69] ; *Jenkins* v. *Locke-Paddon Co.*, 30 Cal.App. 52, 57 [157 P. 537].) Chase argues that this rule applies only where the plaintiff is the selling broker, whereas Iusi is the listing broker here. But the rule of Johnston and Jenkins has been applied where the listing broker is plaintiff. (*Daft* v. *Enos*, 155 Cal.App.2d 315 [318 P.2d 66].) This decision also holds that the court may award a share of the commission already received by the defendant broker, and by declaratory judgment order payment of a proportion of further commissions if and when they are paid by the principal to defendant.

Chase also asserts that the agreement between Iusi and the owner was illegal because it did not specify a definite date of termination. When the exclusive oral agreement was made, disciplinary proceedings were authorized against a broker who was guilty of "[t]he practice of claiming, demanding, or receiving a fee, compensation or commission under any exclusive agreement . . . where such agreement does not contain a definite, specified date of final and complete termination." (Bus. & Prof. Code, § 10176, subd. (f).) As then worded, the statute applied only to the "practice" condemned. Where, as here, only one isolated instance is shown, the language of the then statute does not apply. (*Wilson* v. *Stearns*, 123 Cal. App.2d 472, 479 [267 P.2d 59].) By amendment (Stats. 1955, chap. 1467) adopted before the sale was made, the words "the practice of" were eliminated from the statute. There

is a question whether this amendment invalidated existing agreements. There is room to distinguish the situation before us on the grounds suggested in Wilson (pp. 480-481.) Additionally, the same reasons which support the rule that one broker can recover from another commissions already paid to the latter by the owner, despite the absence of a written agreement between one broker and the owner, may well be applied equally to the situation here presented. We find no indication in this subdivision of section 10176 that it is designed to protect brokers. Since the clients are the protected class, and the buyer here has in fact paid the commission, the modern rule will not strain to establish illegality as a defense which will permit one broker to retain all the fruits of the transaction. (*Norwood* v. *Judd*, 93 Cal.App.2d 276, 288 [209 P.2d 24].) The defense of illegality is not available to Chase.

Finally, Chase contends that the court erred in admitting evidence of the custom of brokers as to division of commissions. First it is argued that such evidence is inadmissible because custom was not pleaded. It has been held that where a custom is not so general as to be within the presumed knowledge of the parties, it must be pleaded. (*Tharp* v. *San Joaquin Cotton Oil Co.*, 27 Cal.App.2d 554, 561 [81 P.2d 443, 82 P.2d 21].) However, trade usage is admissible, although not pleaded, in an action between parties within the trade, on the theory that it must be presumed to be known to parties who are specialists in the field. (*Associated Lathing etc. Co.* v. *Louis C. Dunn, Inc.*, 135 Cal.App.2d 40, 48-49 [286 P.2d 825]; *Covely* v. *C.A.B. Const. Co.*, 110 Cal. App.2d 30, 33 [242 P.2d 87].) The latter rule is applicable here.

Chase also argues that evidence of custom was inadmissible until the existence of a contract was shown. In this argument, he appears to assume that the contract must be express. But the code recognizes an implied contract as one whose "existence and terms are manifested by conduct." (Civ. Code, § 1621.) Such agreements, more properly described as contracts implied in fact, arise from mutual agreement, although the agreement is not expressed in words (1 Williston on Contracts [rev. ed] § 3), and are recognized in California (*Medina* v. *Van Camp Sea Food Co.*, 75 Cal.App. 2d 551 [171 P.2d 445]; see also *City of Pasadena* v. *County of Los Angeles*, 118 Cal.App.2d 497 [258 P.2d 28]). Clearly, extrinsic evidence is admissible to aid in interpretation of the conduct which is claimed to constitute a contract implied in

fact. Here all parties are licensed real estate brokers, and the established custom of their trade is an obvious aid to the determination of what they intended by their conduct. Also, the court impliedly found that there was no express agreement for fixed shares of the commission. As pointed out, the evidence warrants a finding that there was agreement to pay an unspecified share, and in such case evidence of custom would fix the amount of the share. The evidence was properly admitted.

Thompson's appeal is based solely on the claimed insufficiency of the evidence to support the judgment against him and in favor of defendant Chase. But there is flat conflict in the testimony of Thompson and Chase as to an express agreement by the latter to pay Thompson. There is at most a conflict as to the existence of any agreement implied in fact in favor of Thompson. Thus Thompson's appeal must fail.

Judgment in favor of Iusi affirmed, with costs against Chase. Judgment in favor of Chase against Thompson affirmed, with costs to respondent Chase.

Kaufman, P. J., and Dooling, J., concurred.