Albert J. **FIRCHAU**, Emma Firchau Sallender, both individually, and Albert Firchau and Emma Firchau Sallender, as Trustees and as Assignees of Western Oregon Trucking Corporation, Inc., a dissolved Oregon corporation, Firchau Logging Co., Inc., a Nevada corporation, and Independent Loggers and Contractors, Inc., an Oregon corporation, Appellants,

v.

**DIAMOND NATIONAL CORPORATION**, a Delaware corporation, Appellee.

No. 19526.

United States Court of Appeals Ninth Circuit

April 26, 1965.

Clarence H. Pease, Sacramento, Cal., for appellants.

Arthur R. Albrecht, Craig McAtee, McCutchen, Doyle, Brown, Trautman & Enersen, San Francisco, Cal., for appellee.

Before CHAMBERS, HAMLEY and BROWNING, Circuit Judges.

HAMLEY, Circuit Judge:

On January 24, 1963, Albert J. Firchau and others commenced this action against Diamond National Corporation (Diamond) to recover damages in the sum of $1,500,000 for breach of contract. The action was filed in the Superior Court of the State of California in and for the County of Tehama, and was removed to the federal district court because of diversity of citizenship. On motion of Diamond the complaint, in which one claim was asserted, was dismissed on October 17, 1963.

A first amended complaint, purporting to state two claims, was filed on November 21, 1963. The first claim was in general similar to that stated in the original complaint, and sought relief in the same amount. The second claim was stated in the alternative and sought damages in the sum of $1,297,500.

On motion of Diamond, the district court also dismissed the first amended complaint on June 25, 1964. On July 21, 1964, plaintiffs filed a notice of appeal " * * * from the Order dismissing the second claim as pleaded in the first amended complaint. * * * " The court entered a final judgment dismissing the action on July 24, 1964. No further notice of appeal was filed.

Diamond has moved to dismiss the appeal for lack of jurisdiction in this court. The company argues that the order of June 25, 1964, dismissing the first amended complaint, is not an appealable order; that Firchau's purported appeal therefrom is therefore ineffectual; and that no appeal was taken from the subsequently-entered judgment dismissing the action.

An order which dismisses a complaint without expressly dismissing the action is not, except under special circumstances, an appealable order. Mar-

shall v. Sawyer, 9 Cir., 301 F.2d 639, 643. The special circumstances under which this court will regard such an order as final, and therefore appealable, must be such as to make it clear that the district court determined that the action could not be saved by any amendment of the complaint. Marshall v. Sawyer, supra, at 643.

Assuming such circumstances did not exist in this case, the question remains whether the notice of appeal, filed on July 21, 1964, may not be regarded as running against the subsequently-filed final judgment of dismissal.

■ This court is extremely liberal in accepting as sufficient for the purposes of a notice of appeal informally drawn and improperly labeled documents. Poe v. Gladden, 9 Cir., 287 F.2d 249, 251; Yanow v. Weyerhaeuser Steamship Co., 9 Cir., 274 F.2d 274, 282. In this spirit, we regard the notice of appeal here in question as directed to the final judgment of dismissal, overlooking as a technical defect not affecting substantial rights, the premature filing of that notice.

The Supreme Court of the United States similarly viewed a notice of appeal filed before entry of the final decision in a criminal proceeding. See Lemke v. United States, 346 U.S. 325, 74 S.Ct. 1, 98 L.Ed. 3. It did so in view of Rule 52(a), Federal Rules of Criminal Procedure, reading: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Since a substantially similar provision is contained in Rule 61, Federal Rules of Civil Procedure, we think the rationale of Lemke supports our view as expressed above.[1] The motion to dismiss the appeal is denied.

On the merits, Firchau questions only the dismissal of the second claim of the first amended complaint, making no issue of the dismissal of the first claim stated in that pleading.

In his second claim Firchau alleged that he and Diamond, during the winter of 1960 to 1961, entered into an oral contract wherein Firchau agreed to cut and deliver to Diamond's Red Bluff or other plants, forty-five thousand M board feet of logs for a minimum price of $22.75 per thousand. Firchau further alleged that, on or about April 1, 1961, Diamond anticipatorily breached that oral contract, to Firchau's damage in the amount of $1,297,500.

In dismissing this claim for failure to state a claim on which relief can be granted the district court held that the claim is barred by California Code of Civil Procedure § 339(1). That statute provides that an action upon a contract not founded upon an instrument in writing must be brought within two years after the accrual of the cause of action. According to the allegations of the first amended complaint, the cause of action on the second claim accrued on April 1, 1961. The district court held that the action upon that claim was not brought until November 21, 1963, when the first amended complaint was filed.

Firchau argues here, however, as he did in the district court, that the second claim relates back to the date of the original complaint, and since he filed the latter pleading on January 24, 1963, which was less than two years after the accrual of the cause of action on the second claim, the California two-year statute of limitations does not bar that claim.

Consideration of this argument requires us to compare the allegations contained in the original complaint with those set out in the second claim of the first amended complaint. See Sidebotham v. Robison, 9 Cir., 216 F.2d 816, 823.

In the original complaint Firchau alleged that, in February, 1959, he and Diamond entered into an oral contract having a term of four years. This contract, Firchau alleged, pertained to timber operations on Diamond's lands in Shasta and Tehama Counties, California, including logging, road construction, and

1. See, also, United States v. Arizona, 346 U.S. 907, 74 S.Ct. 239, 98 L.Ed. 405; Hoiness v. United States, 335 U.S. 297, 300, 69 S.Ct. 70, 93 L.Ed. 16.

the hauling of logs to Diamond's plant at Red Bluff, California, and elsewhere. Under the terms of this so-called "Master Agreement," plaintiff averred, he was to log forty-five thousand M board feet each year from forest areas then generally designated, but to be thereafter specifically designated. Under this agreement, Firchau alleged, he was to haul these forest products to Diamond's plants and, during the first year he was to receive from twenty to twenty-two dollars per thousand net Scribner Decimal C scale for the logs, depending on the named area from which they were taken.

Firchau further alleged in his original complaint that, under the master agreement: (1) Firchau would build logging roads in such areas and for such prices as would be determined by the parties from time to time; (2) the price per thousand in successive years would be negotiated from a base price of twenty-two dollars per thousand depending upon variances in the cost of labor and parts, and the length of haul; (3) Firchau would purchase from Diamond certain equipment, payment to be made by deducting one dollar per thousand board feet for all deliveries made by Firchau under the master agreement; and (4) the actual areas to be logged from year to year would be in accordance with a described five-year logging program.

Firchau also alleged in the original complaint that pursuant to the master agreement: (1) he and Diamond entered into a subordinate written agreement on February 17, 1959, covering logging and associated operations from April 1 to December 15, 1959;[2] (2) pursuant to this subordinate written agreement, he cut, logged and delivered forty-seven thousand M board feet during the 1959 season; (3) he and Diamond entered into a substantially similar subordinate written agreement on February 8, 1960, covering logging and associated operations from March 1 to December 1, 1960; and (4) pursuant to this second subordinate written agreement, he cut, logged and delivered forty-nine thousand M board feet during the 1960 season. The original complaint (Paragraph XVI) then contains the critical allegations quoted in the margin.[3]

2. Firchau alleged that at the time the first subordinate written agreement was negotiated Diamond advised him that the logging phase of the master agreement would have to be specifically written from year to year pursuant to the master agreement because:

"1) Defendant could not then project a precise area of logging operations for more than a year in advance although defendant had tentative annual areas designated on its said master program maps, and

"2) Defendant couldn't fix the price per M. to be paid quite so far in advance because of labor and parts costs and haul variances, and

"3) A specifically written logging contract would be developed from year to year pursuant to said Master Agreement, and

"4) That plaintiffs did not need a longer term written logging contract in view of the fact they were going to have a three (3) year equipment purchase contract."

3. "That from the conclusion of logging operations at the end of the said 1960 cutting season until on or about the 1st day of April 1961, plaintiffs, in reliance upon the covenants of said Master Agreement on the part of defendant and upon the conduct of defendant which in no way indicated any doubt or question to plaintiffs but that plaintiffs would be allowed to perform said Master Agreement during the 1961 cutting season, made all their winter plans and necessary preparations for the continued operation pursuant to said Master Agreement for the cutting season of 1961; that thereafter and on or about the 1st day of April 1961, plaintiffs were first summarily notified by defendant that defendant did not propose to enter into any further annual logging and hauling contracts pursuant to said Master Agreement or otherwise with plaintiffs and that if plaintiffs desired to do any logging or hauling operation for defendant during the year of 1961, they must submit a bid therefor, competitive to the entire industry. Plaintiffs necessarily, and under protest, submitted such a bid on the 11th day of April 1961. * * * That thereafter and on the 28th day of April 1961, defendant did, in writing, reject

In the second claim of the first amended complaint, after incorporating by reference certain introductory paragraphs of the original complaint, Firchau stated his claim as follows:

"That plaintiffs and defendant did during the winter of 1960–1961 enter into an oral contract wherein and whereby plaintiffs would cut, log and deliver to defendant's Red Bluff or other plant, 45,000 M. board feet of logs for a minimum price of $22.75 per M. On or about April 1, 1961, defendant wrongfully and unlawfully anticipatorily breached said contract all to the damage of plaintiffs in the amount of $1,297,500.00. Plaintiffs have performed all covenants and conditions precedent required of them by said oral logging contract."

This being a diversity action arising under the laws of California, California Code of Civil Procedure § 339(1) providing that actions upon a contract not founded upon an instrument in writing must be brought within two years, controls. We need not decide whether California law also controls in determining whether, for the purposes of applying that statute, the second claim stated in the first amended complaint relates back to the original complaint. This is true since we would reach the same conclusion in this case whether or not California law applies.

In California, as stated in Austin v. Massachusetts Bonding & Insurance Co., 56 Cal.2d 596, 601, 15 Cal.Rptr. 817, 819, 364 P.2d 681, 683 the amended complaint would be deemed filed as of the date of the original complaint " * * *

provided recovery is sought in both pleadings on the same general set of facts." And, under Rule 15(c), Federal Rules of Civil Procedure, such an amendment relates back to the date of the original pleading: "[w]henever the claim * * * asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading * * *." [4]

In holding that the second claim of the first amended complaint did not relate back, the district court recognized that Diamond's alleged conduct of April, 1961, may have constituted a breach of both the master agreement as alleged in the original complaint and the oral agreement of 1960 to 1961 alleged in the second claim of the first amended complaint. But, the district court stated, the second claim arises out of an entirely new and different contract than was set forth in the original complaint. Accordingly, the court concluded, there was nothing in the original complaint which would place defendant on notice of such a contract.

Firchau argues that the second claim of the first amended complaint pleads a contract implied in fact arising out of conduct of the parties referred to in the original complaint. Accordingly, he urges, the second claim is but an alternative count which relates back to the initial pleading.

The main thrust of the original complaint is that Diamond breached an oral master agreement to enter into a subordinate cutting and hauling contract for the 1961 and 1962 seasons. In the course of stating that claim, however,

---

plaintiffs' bid by letter executed by said ROY D. BERRIDGE. * * *

"That by adopting said bid procedure over plaintiffs' objection and rejecting the bid of plaintiffs, defendant, without cause or provocation did wilfully, unlawfully, maliciously and oppressively breach said Master Agreement resulting in unmitigated hardship upon plaintiffs and each of them. That plaintiffs performed all the covenants and conditions pre-

cedent required by and of them to be performed by said Master Agreement at the time of the said breach thereof by defendant."

4. In Austin, at page 819 of 15 Cal.Rptr., at page 683 of 364 P.2d, the court noted that " * * * subdivision (c) of Rule 15 of the Federal Rules of Civil Procedure, * * * adopts the modern rule * * *."

facts are alleged which, considered together, provide considerable foundation for a claim that by reason of the course of conduct of the parties in the winter of 1960 to 1961 and prior thereto, a contract is to be implied in fact covering the 1961 season. These alleged facts concern the purchase by Firchau of Diamond's equipment on a payment rate requiring three logging seasons, and the conduct of Diamond and Firchau leading into the 1961 season, as set out in the first few lines of Paragraph XVI, quoted in note 3. A contract implied in fact covering the 1961 season would not necessarily have been inconsistent with what we have referred to as the main thrust of the original complaint.[5]

It therefore appears to us that if the second claim of the first amended complaint states a claim on a contract implied in fact, covering the 1961 season, arising out of the conduct of the parties, it has sufficient foundation in the facts alleged in the initial pleading to require application of the doctrine of relation back.

Diamond argues, however, that the second claim does not plead a contract implied in fact, but an express oral contract.

■■ We agree. A contract implied in fact is not expressed in words but is implied from the promisor's conduct. California Civil Code § 1621, Weitzenkorn v. Lesser, 40 Cal.2d 778, 256 P.2d 947, 959; Iusi v. Chase, 169 Cal.App.2d 83, 337 P.2d 79, 82. An oral contract, on the other hand, is one in which the promisor's undertaking is expressed in words, such words not being reduced to writing. See Treadwell v. Nickel, 194 Cal. 243, 228 P. 25, 33. See also, Rogers v. American President Lines, Ltd., 9 Cir., 291 F.2d 740, 742.

The first claim of the first amended complaint contains substantially the same facts pertaining to the conduct of the parties as the original complaint. As before noted, Firchau does not contest the dismissal of that claim. His second claim in the first amended complaint, however, makes no reference to the facts alleged in the original complaint which we have held provide a considerable foundation for a claim based on a con-

---

5. Contrary to Diamond's view, the oral master agreement, as pleaded in the original complaint, did not require that the subordinate annual contracts be in writing. That contract, alleged to have been entered into " * * * during or about the first week in February, 1959 * * * " required only that the areas to be logged " * * * would be specifically designated by defendant. * * *," Firchau would build logging roads in such areas and for such prices " * * * as would be determined by parties hereto from time to time. * * *," and the price in successive years after 1959 would " * * * be negotiated. * * * "

It is true that, as alleged in the original complaint, the parties subsequently entered into written subordinate contracts for the 1959 and 1960 season " * * * pursuant to said Master Agreement." But that pleading does not on its face establish that oral subordinate contracts would not have been sufficient compliance with the Master Agreement. According to the initial pleading, at the time the first written subordinate contract was negotiated, Diamond advised Firchau that "[a] specifically written logging contract would be developed from year to year pursuant to said Master Agreement. * * * " However, Diamond's willingness to manifest the annual arrangements by a writing, or even its demand that they be so manifested, does not establish that the Master Agreement so required.

In his original complaint Firchau alleged that, on April 1, 1961, Diamond notified Firchau that Diamond " * * * did not propose to enter into any further annual logging and hauling contracts pursuant to said Master Agreement. * * * " But this does not necessarily establish that the parties had not already entered into a contract implied in fact covering the 1961 cutting season. It may only mean that Diamond erroneously assumed that, under the master agreement, it would be bound only if the arrangement for that year was reduced to writing.

tract implied in fact.[6] It is based expressly and exclusively upon an alleged "oral contract" entered into during the winter of 1960 to 1961.

 It is unnecessary for us to determine whether an oral contract of the kind alleged in Firchau's second claim relates back to the original complaint, because he indicates he does not want an opportunity to prove that kind of contract. We have held, however, that a claim based on an implied contract arising from the conduct of the parties would relate back. Firchau believes he can prove such a claim. Under these circumstances we think it appropriate to afford him an opportunity to present to the district court the question of whether he may further amend his complaint to set out such a claim.

Therefore, adapting the technique followed by this court in Evans v. Carroll & Co., 9 Cir., 259 F.2d 577, 579, the judgment is reversed as to Firchau's second claim, and the cause is remanded for the purpose of further proceedings. This will enable Firchau, if he so desires, to move for leave to amend his pleadings to present a claim based on a contract implied in fact arising from the conduct of the parties for which there is a substantial foundation in the allegations of the original complaint.

 In the exercise of its discretion in acting upon such a motion the district court may, if it grants the motion, prescribe as a condition reasonable terms compensating appellee for any loss or expense occasioned by Firchau's failure to file adequate pleadings in the first instance. In the event no such motion is made, or is for good cause denied, final judgment for Diamond may be entered. Because of the special circumstances of this case Diamond, as appellee, will recover its costs on this appeal notwithstanding the fact that the judgment is reversed, as to Firchau's second claim.

6. These allegations had to do with the purchase by Firchau of Diamond's equipment on a payment rate requiring three