Filed 2/26/15

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE


| | |
|---|---|
| HILLEL SANOWICZ, | B252962 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC118380) |
| v. | |
| BEN BACAL, | |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Gerald Rosenberg, Judge. Reversed and remanded.

Jonathan P. Chodos for Plaintiff and Appellant.

Law offices of Ronald Richards and Associates, APC, Ronald Richards and Nicholas A. Bravo, for Defendant and Respondent.


\* \* \* \* \* \* \* \*

INTRODUCTION

Plaintiff Hillel Sanowicz (Sanowicz) and defendant Ben Bacal (Bacal) are licensed real estate salespersons. Sanowicz alleges that he and Bacal agreed to share commissions earned by either of them on certain sales of real property, but that Bacal breached that agreement. Sanowicz sued both Bacal and Sotheby's International Realty, Inc. (Sotheby's), dismissing the latter shortly after filing suit. This appeal is from the judgment entered by the trial court sustaining without leave to amend Bacal's general demurrer to Sanowicz's first amended complaint. We hold that two licensed real estate agents may agree to share commissions earned under the circumstances we describe in this opinion. Thus, we reverse, determining that leave should be granted to amend on remand if Sanowicz can do so in a manner consistent with the legal principles discussed.

PROCEDURAL AND FACTUAL BACKGROUND

On September 13, 2012, Sanowicz, a licensed California real estate agent,[1] filed his complaint against Sotheby's, a licensed California real estate broker, and Bacal, a licensed California real estate agent, in which Sanowicz alleged causes of action for breach of fiduciary duty, fraud, negligent misrepresentation, breach of contract, conversion, and money had and received. Plaintiff voluntarily dismissed Sotheby's without prejudice on December 12, 2012. After Bacal's demurrer to the original complaint was sustained with leave to amend, Sanowicz filed his first amended complaint on April 5, 2013.

We take the facts relevant to resolution of this appeal from the first amended complaint as this appeal challenges the trial court's order sustaining a demurrer. (*Adams v. Paul* (1995) 11 Cal.4th 583, 586.) Sanowicz was a real estate agent employed at John Bruce Nelson & Associates (JBN), a licensed real estate agency, at the time he met Bacal,

---

[1]     Licensed real estate salespersons are referred to as "agents" in the parties' briefs. We will use that term in this opinion even though the statutes we are construing use the former term.

who was then working at Keller Williams (KW), also a licensed California real estate agency.

While Sanowicz was an agent at JBN, he and Bacal represented, respectively, the potential buyer and seller of a particular parcel of real property. Although that transaction did not close, they kept in contact and eventually Bacal suggested to Sanowicz that they form a "joint venture" in which they jointly would work on real estate transactions. At one point in their collaboration, Sanowicz left JBN and moved to work at KW, at the instigation of Bacal. One of Sanowicz's clients was a celebrity who was looking to purchase residential real property. Bacal encouraged Sanowicz to tell potential sellers that he had a celebrity interested in purchasing a property like theirs. Bacal used this representation to create new "representation relationships" with potential sellers of "A class estate properties in exclusive areas of Los Angeles." Sanowicz and Bacal entered into oral and written agreements that they would share equally any commissions earned, and did actually share some commissions. Three written agreements of this nature are exhibits to the first amended complaint. Each is signed by both Sanowicz and Bacal and concerns a particular parcel of residential real property.

Sanowicz also alleged that in or around September 2010, Sanowicz met Joseph Lam (aka Lam Cheng) who was interested in selling a property at 777 Sarbonne Road, Los Angeles (Sarbonne). Sanowicz then introduced Bacal to Lam with the express understanding and oral agreement that Sanowicz and Bacal would split the commission earned on the sale of Sarbonne. On October 11, 2010, while both were at KW, they entered into a written agreement, on a California Association of Realtors Referral Fee Agreement form, to equally divide any commissions earned on the sale of Sarbonne if Lam were to sell Sarbonne within two years of the date of their agreement. That agreement is Exhibit A to the first amended complaint. No signature of a licensed real estate broker appears on this document.

Bacal left KW (for Sotheby's) in April or May 2012. Sanowicz alleged Bacal moved to a new broker so that he could consummate the sale of Sarbonne without

3

Sanowicz's knowledge. Sanowicz specifically described Sotheby's as participating in the sale of the Sarbonne property.

Sanowicz further alleged that Bacal falsely represented to him that Bacal was not continuing to work on the Sarbonne project even though Bacal "was going into escrow on Sarbonne the very next day" after he made that claim. Sanowicz alleged that Sarbonne was sold by Sotheby's and Bacal (as broker and agent respectively) for approximately $14,000,000, with escrow closing on July 16, 2012. This was within two years of the date of the original contract between Sanowicz and Bacal to share commissions on the sale of this property.

In June 2012, prior to the sale of Sarbonne, Sanowicz asked Bacal to disclose what "joint projects" he continued to work on and "to document his prior arrangements with Sanowicz on the sharing of commissions." In response, Bacal identified "a few projects and represented he was not working on others." Based on these discussions, Sanowicz and Bacal entered into compensation sharing agreements on still other projects.[2] Sanowicz claims in his complaint that there are additional property transactions on which Bacal has earned commissions which are subject to the commission sharing agreements but which Bacal has concealed from Sanowicz, with the result that Bacal owes Sanowicz additional commission income.

Sanowicz seeks one half of the $210,000 agent's commission Bacal received on the sale of Sarbonne, with interest. In addition, Sanowicz seeks one half of the commissions earned on other sales made as required by their joint venture agreements.

The first amended complaint contained six causes of action: (1) for breach of fiduciary duty based on Bacal allegedly inducing Sanowicz to move from JBN to KW on the promise to share contacts and commissions and based on their partnership and "joint enterprise" arrangements; (2) for fraud for making the representations that induced Sanowicz to move to KW and to lull Sanowicz into not demanding that they enter into a

---

[2] Two such documents are contained in Exhibit B to the first amended complaint. Each includes the statement "KW/Sotheby's [*sic*] share this pocket." This statement suggests an agreement between the two brokerage firms.

4

new joint venture agreement "that addressed the move to Sotheby's;" (3) for negligent misrepresentation; (4) for breach of contract to pay the half of commissions earned under their agreement on the Sarbonne transaction; (5) for conversion of the half of the commission earned by Bacal on the sale of Sarbonne which Sanowicz contends is due to him by reason of their commission sharing agreement; and (6) for money had and received.

Bacal filed timely general and special demurrers to the first amended complaint, asserting the same defects were present in each of the causes of action, and a separate motion to strike all allegations requesting punitive damages. He demurred generally on the grounds that each claim failed to state a cause of action (Code Civ. Proc., § 430.10, subd. (e)), and specially, asserting that each claim was fatally uncertain (Code Civ. Proc., § 430.10, subd. (f)) and that Sanowicz lacked the legal capacity to sue (Code Civ. Proc., § 430.10, subd. (b)).[3]

Bacal's principal legal contention was that Business and Professions Code section 10137,[4] which provides that it is unlawful for a real estate agent to accept compensation from any person other than the real estate broker under whom he or she is licensed, makes illegal the agreements alleged between Sanowicz and Bacal. On this premise, Bacal contended that all of Sanowicz's claims for relief were barred by statute and could not survive the general demurrer, nor could the complaint be amended to state a valid claim for relief.

In addition to filing a legal memorandum in opposition, Sanowicz's counsel filed his own declaration, to which were attached evidentiary materials. Bacal filed objections, generally challenging admission of any factual matters not the proper subject of judicial notice; he also objected to specified portions of the declaration and its attachments.

---

**3** We need not discuss Bacal's additional arguments in support of his general demurrer with the exception of his arguments as to his general demurrer to the cause of action for conversion, which we resolve later in this opinion.

**4** All subsequent undesignated references are to the Business and Professions Code.

On October 3, 2013, the trial court issued its ruling by minute order which stated:

"The Demurrer filed by Defendant Ben Bacal to the First Amended Complaint is sustained without leave to amend.

"Under Business and Professions Code section 10137, a licensed real estate salesperson cannot contract in his/her own name, nor accept compensation from an [*sic*] person other than the broker under whom he/she is licensed. (See *Grand v. Griesinger* (1958) 160 Cal.App.2d 397, 406.)

"Defendant's Motion to Strike is moot.

"The case is ordered dismissed with prejudice."

The minute order contains no ruling by the trial court resolving the evidence issues presented,[5] nor did it make any rulings on the special demurrers or on the motion to strike.

---

[5] We expect that the trial court did not expressly rule on the evidence offered by Sanowicz in his opposition to the demurrer because it was well aware of the limitation on consideration of such "evidence" on demurrer as well as of the lack of authority for judicially noticing the types of documents submitted. Nevertheless, it would have been appropriate that the evidence issues be resolved by a ruling stated on or otherwise made a part of the record.

As the parties did not include a reporter's transcript of proceedings of the hearing on the demurer and motion to strike, we cannot know if the trial court addressed and resolved the evidence issues on the record during the October 3, 2013 hearing.

On June 4, 2014, we issued an Order Re: Briefing, in which we asked the parties to address the effect on this appeal of the absence of a reporter's transcript of the trial court proceedings. Having reviewed their submissions we have determined to resolve this matter based on the record properly before us. Thus, we take judicial notice of the fact of filing in the trial court of the Declaration of Jonathan Chodos and the exhibits thereto (which were attached to Sanowicz's opposition to the demurrer to the first amended complaint) and conclude that none of them (except for the copy of the trial court's own minute order containing the ruling on the demurrer to the original complaint) properly was the subject of judicial notice in that court, and that none of them may be considered on this appeal. (See *Chodos v. Cole* (2012) 210 Cal.App.4th 692, 699, fn. 4.) With respect to any arguments made at the October 3 hearing in the trial court, as it is appellant's burden to provide a reporter's transcript if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . ." (Cal. Rules of Court, rule 8.120(b)), and it is the appellant who in the first instance may elect to proceed without a reporter's transcript (Cal. Rules of Court, rule

6

Plaintiff timely appeals from the judgment. A court order sustaining a demurrer without leave to amend is required to state "the specific ground or grounds upon which its decision or order is based. (Code Civ. Proc., § 472d; *Fremont Indemnity Co. v. Fremont General Corp*. (2007) 148 Cal.App.4th 97, 111.) When a trial court sustains a demurrer without leave to amend in general terms, we must assume that the court ruled only on the general demurrer and not on the special demurrer. (*Briscoe v. Reader's Digest Assn., Inc*. (1971) 4 Cal.3d 529, 544 (overruled on other grounds in *Gates v. Discovery Communications, Inc.* (2004) 34 Cal.4th 679, 685); *Rogoff v. Grabowski* (1988) 200 Cal.App.3d 624, 628.) We are precluded from sustaining the special demurrers in this case as the trial court did not rule on them. (*Bridgeford v. Pacific Health Corp.* (2012) 202 Cal.App.4th 1034, 1041; accord, *Stowe v. Fritzie Hotels*, *Inc.* (1955) 44 Cal.2d 416, 425; *Weinstock v. Eissler* (1964) 224 Cal.App.2d, 212, 237.) We therefore consider on this appeal only those issues raised by the general demurrers.

STANDARD OF REVIEW

"A general demurrer searches the complaint for all defects going to the existence of a cause of action and places at issue the legal merits of the action on assumed facts." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

---

8.130(a)(4)), we consider waived any arguments which Sanowicz makes on appeal that do not appear in the written record before us. This applies in particular to the "documents which buttressed the allegations of the [first amended complaint]" referenced in Sanowicz's reply brief, which are not proper subjects of judicial notice. (See *Rossiter v. Benoit* (1979) 88 Cal.App.3d 706, 712.) Further, as our review is de novo, our analysis proceeds independently of the trial court's reasoning. We review the judgment rather than the reasons for the judgment. (*E. L. White, Inc. v. City of Huntington Beach* (1978) 21 Cal.3d 497, 504 and fn. 2.) It is the validity of the trial court's action rather than its reasons which is reviewed. (*Weinstock v. Eissler, supra,* 224 Cal.App.2d at p. 225.)

We also note that the minute order for the date of the hearing does not contain any entry indicating the presence of a reporter and neither party has provided the written order which the trial court would have made appointing a reporter for the hearing on these matters. Nor has either party actually stated that a reporter was present, something that is easily verifiable as one or both parties would have paid or shared the expense of the reporter.

7

On appeal, "[w]hen a demurrer [has been] sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse." (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865; see Code Civ. Proc., § 430.10, subd. (e).) We follow the well-settled rule that "[w]hen reviewing a judgment dismissing a complaint after the granting of a demurrer without leave to amend, courts must assume the truth of the complaint's properly pleaded or implied factual allegations." (S*chifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) On the other hand, the reviewing court "does not . . . assume the truth of contentions, deductions or conclusions of law." (*Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 967.)" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) Our standard of review is de novo. (*McCall v. PacifiCare of California, Inc*. (2001) 25 Cal.4th 412, 415.)

CONTENTIONS AND ANALYSIS

Business and Professions Code section 10137 provides: "It is unlawful for any licensed real estate broker to employ or compensate, directly or indirectly, any person for performing any of the acts within the scope of this chapter who is not a licensed real estate broker, or a real estate salesperson licensed under the broker employing or compensating him or her; provided, however, that a licensed real estate broker may pay a commission to a broker of another State. [¶] No real estate salesperson shall be employed by or accept compensation from any person other than the broker under whom he or she is at the time licensed. [¶] It is unlawful for any licensed real estate salesperson to pay any compensation for performing any of the acts within the scope of this chapter to any real estate licensee except through the broker under whom he or she is at the time licensed. [¶] For a violation of any of the provisions of this section, the commissioner may temporarily suspend or permanently revoke the license of the real estate licensee, in accordance with the provisions of this part relating to hearings."

8

Sanowicz contends that this statute does not apply under the factual circumstances alleged in the first amended complaint because the commission sharing arrangements between him and Bacal were merely agreements between two properly licensed agents working for the same broker "as agents for [that broker]."[6] Sanowicz further contends that several of these arrangements were in writing, while others were oral. Thus, he argues that the statutory provision mandating that commissions be paid to brokers does not bar payments pursuant to commission sharing arrangements once the broker has received the commission.[7]

Bacal's contrary contention, accepted by the trial court, is that section 10137 mandates that the broker be a party to every commission transaction and that the absence of the broker's signature on the commission sharing agreements in the record is fatal. Implicit in the ruling below is that agreements among agents to share commissions are illegal if not in writing and signed by the supervising broker.

Sanowicz relies on the statutory language, which on its face does not preclude the written or oral commission sharing arrangements he alleges he and Bacal made. Bacal's rejoinder is premised on the second paragraph of section 10137 which clearly forbids a real estate agent from paying to, or accepting any compensation from, any person other than a broker, as well as on the third paragraph of that section which makes it unlawful for any agent to pay any compensation to any other person "except through the broker under whom he or she is at the time licensed." For legal authority for his contention,

---

[6] Sanowicz also challenges the ruling on the motion to strike the punitive damages allegations which the trial court denied as moot and which we do not consider on this appeal as a general demurrer cannot be used to test the adequacy of punitive damage allegations. (*Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 163-164.) Because we reverse, the trial court will have an opportunity to address the issues raised in the motion to strike.

[7] Alternatively, Sanowicz seeks a determination that would allow him to amend his complaint to allege that the broker had full knowledge of the commission sharing arrangements, consented to them, and agreed to cooperate in implementing these agreements, including receiving and distributing to its agents, the parties to this litigation, their proper shares of commissions.

9

Bacal relies on *Grand v. Greisinger, supra,* 160 Cal.App.2d 397, which he contends holds that "ONLY a contracting 'broker' may sue or be sued for commissions, PERIOD." (Emphasis Bacal's.)

*Grand v. Greisinger, supra,* 160 Cal.App.2d 397, explains the broker-agent relationship in the following terms. "The entire statutory scheme [including section 10177, subd. (h)] requires the broker . . . to supervise the activities of his salesmen [real estate agents]. . . . [¶] It is evident that brokers and [agents] belong in distinctly different categories and [] the broker, because of his superior knowledge, experience and proven stability is authorized to deal with the public, contract with its members and collect money from them; the salesman, on the other hand, is strictly the agent of the broker. He cannot contract in his own name [citations], nor accept compensation from any person *other than the broker under whom he is licensed*; it is a misdemeanor for anyone . . . to pay or deliver to anyone other than the broker compensation for services within the scope of the act. (§ 10138.)" (*Id.* at p. 406 (italics added); accord, *Schaffter v. Creative Capital Leasing Group, LLC* (2008) 166 Cal.App.4th 745, 757.)

Sanowicz does not dispute the nature of the broker-client relationship and the need for written contracts in that relationship, or the restrictions on to whom the commissions on real estate transactions are paid—initially. Instead, Sanowicz distinguishes the application of these statutes and the cases upon which Bacal relies for his contention, arguing that "the core premise of the demurrer was without merit." Thus Sanowicz argues that Bacal misinterprets the scope of section 10137, instead contending that section 10137 does not apply to commission sharing arrangements in and among the licensed broker and any licensed agents working for that broker, or between licensed real estate agents themselves—so long as the restrictions on the manner of payment are maintained. In support of his contention Sanowicz argues, "it is undisputed that at all relevant times, both parties were licensed real estate agents;" they were both working for a licensed broker [KW] when they entered into the agreements at issue; the work for which Sanowicz seeks to implement that commission sharing agreement was made while he was working at KW; and there is nothing in section 10137 that makes their agreement

10

illegal. Sanowicz further contends that section 10137 only requires that the payment be made "through the broker under whom [the agent] is at the time licensed."[8]

Bacal responds by pointing out that the first amended complaint does not allege that any licensed real estate broker at [KW] ever consented to the commission sharing arrangement between Sanowicz and Bacal and that this requirement is evidenced on the face of the exhibits which Sanowicz attached to the second iteration of his complaint. From the absence of any written commission sharing agreement which is also signed by a KW broker, Bacal argues that each of the six causes of action is subject to (a general) demurrer. "No amount of amendment can cure those legal deficiencies. [¶] . . . California law expressly precludes these types of actions and their derivative claims. . . ."

In reply, Sanowicz argues that the "protected class" in a residential real estate sales transaction is the client, the seller or purchaser of the home, rather than the broker or the agent, and that it would be error to interpret section 10137 to validate one agent's efforts to keep commissions from another agent with whom the former promised to share those commission as that would be a misapplication of the statute to a group it was not intended to protect (real estate agents as opposed to the sellers and buyers of real property) and would result in unjustly enriching persons who had made promises which are not contrary to law, citing *Norwood v. Judd* (1949) 93 Cal.App.2d 276, 288-289 [rule against enforcing illegal arrangement not to be applied where public would not be protected and defendant is guilty of greater moral fault], and *Denning v. Taber* (1945) 70 Cal.App.2d 253, 257 [equitable relief granted to one partner in a partnership: the illegality argued as a defense was failure to obtain a building business license for the now-closed business, which failure was considered insignificant]. Thus, Sanowicz argues, the statute must be interpreted to promote a fair result, or at least not to preclude one.

---

**8** Thus, Sanowicz argues, with respect to the commission alleged to be due on the Sarbonne property, "all Bacal had to do . . . was to direct Sotheby's to make payment of Sanowicz's share of the Sarbonne commission [] to KW, who would then distribute it to Sanowicz."

11

It is well established that (1) the agreement "authorizing or employing a broker to purchase or sell real estate" is invalid if it is not in writing (Civ. Code, § 1624, subd. (a)(4); *Iusi v. Chase* (1959) 169 Cal.App.2d 83, 86; *Colburn v. Sessin* (1949) 94 Cal.App.2d 4); (2) contracts among brokers or between brokers and agents are not subject to the statute of frauds (Civ. Code, § 1624, subd. (a)(4) [by exclusion]; *Grant v. Marinell* (1980) 112 Cal.App.3d 617, 619; *Holland v. Morgan-Peacock Properties* (1959) 168 Cal.App.2d 206, 210); (3) only a broker may recover a commission on the sale of real property (*Iusi v. Chase, supra,* 169 Cal.App.2d at p. 86; *Colburn v. Sessin, supra,* 94 Cal.App.2d 4; see cases collected in 2 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 5.1, pp. 5-5 et seq.); (4) a broker may not share his commission with an unlicensed person (§ 10137); (5) an agent may not accept compensation from anyone other than the broker under whom he or she is at the time licensed (§ 10137); (6) a broker can only compensate licensed agents employed by him or her (*Firpo v. Murphy* (1925) 72 Cal.App. 249, 253); and (7) no agent may pay any part of a commission received "except through the broker under whom he or she is at the time licensed" (§ 10137).

These restrictions, while broad, are not as encompassing as Bacal contends.  Thus, (1) a broker may share commission with the unlicensed principal in the transaction because the principal is not performing acts for which a real estate license is required (*Williams v. Kinsey* (1946) 74 Cal.App.2d 583, 592-593); (2) when an unlicensed person performs both activities that require a license and activities that do not require a license, he or she may recover for the latter if that portion of the contract is severable and there is separate legal consideration for the severed portion of the agreement (see *Mailand v. Burckle* (1978) 20 Cal.3d 367, 384 [franchise agreement severed; potential for recovery on severed portion acknowledged]); and (3) the statute of frauds does not bar recovery by an agent of commissions due him or her based on  an oral  contract (Civ. Code, § 1624,

12

subd. (a)(4) [by exclusion]; *Gorham v. Heiman* (1891) 90 Cal. 346, 358*; Iusi v. Chase, supra,* 169 Cal.App.2d at p. 86).[9]

Bacal relies on three key circumstances in support of his contention: (1) the absence of the broker's signature on the commission sharing writings (exhibits A and B to the first amended complaint); (2) the absence from the first amended complaint of an allegation that the broker had approved the purported agreements between the agents to share commissions; and (3) *Grand v. Griesinger, supra,* 160 Cal.App.2d 397, which he contends states that only a broker may sue for real estate commissions.

Bacal errs in his underlying premise. The gravamen of Sanowicz's complaint is not a suit to collect the commission *due* to the broker. Instead, Sanowicz is suing to collect a portion of the commissions *already paid* to the broker; it is based on the allegation that the commissions already have been paid to the broker KW that Sanowicz seeks to enforce the commission sharing arrangements which he alleges he had made with Bacal (with the knowledge and consent of KW). Sanowicz also alleges that the commission on the Sarbonne sale has already been paid to Sotheby's. He is suing to collect "his portion" of commission already paid to brokers based on the commission sharing arrangement he and Bacal made before Bacal left KW for Sotheby's with respect to Sarbonne, and on other commission sharing arrangements made. *Grand v. Griesinger, supra*, 160 Cal.App.2d 397, the case upon which Bacal relies, does not address this issue. Instead, that case was concerned with the scope of unsupervised contact between agents

---

[9]    Department of Real Estate regulations do require that the agent's contract with his or her supervising broker be in writing and include "material terms;" this regulation specifically includes terms of compensation (10 Cal. Code Regs., § 2726), but neither the statutes nor the regulations governing realtors specifically state that an oral contract for payment of commission by the broker to the agent is unenforceable. For example, while the absence of a written contract with an agent may subject the contracting broker to discipline by the Real Estate Commissioner, the oral agreement for compensation is enforceable between the parties. (2 Miller & Starr, Cal. Real Estate, *supra*, § 5.15, p. 5-79.)

13

and the public in the context of a real estate commissioner disciplinary proceeding.  (*Id.* at p. 399.)[10]

Neither party has cited a case which addresses the application of section 10137 to the sharing of commissions among real estate agents, nor has the court's independent research located a case directly on point.[11]

We turn to examine the statute itself.  In doing so, we note that if its language is clear and unambiguous there is no need for judicial construction.  ". . . [W]e are guided by the well-established principle that our function is to 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law.'  [Citations omitted.]  We determine such intent by first focusing on the words used by the Legislature, giving them their ordinary meaning.  [Citations omitted.]"  (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 338.)

In this case, the plain meaning of the statute at issue[12] is clear, as is the scope of actions which the statute is intended to address.  They are exactly those subjects clearly

---

[10]  We do not hold that Sanowicz will necessarily recover on his claims.  The facts established at trial will determine whether he will have established compliance with section 10137 and other applicable laws, as well as other necessary elements of proof.

[11]  In his reply brief, Sanowicz cites *Iusi v. Chase, supra,* 169 Cal.App.2d 83, arguing that its reasoning resolves the issue presented here.  In that case, separate suits were brought by two of the three brokers who had agreed to share the commission on the sale of a property listed for sale by the third broker, Chase, each alleging the common count of money had and received.  The two complaints were consolidated for trial, after which the trial judge found that 50 percent of the commission already paid to Chase was owed to Iusi and that the other plaintiff, Thompson, must collect his share from Iusi, as it was Iusi rather than Chase who had reached an agreement with Thompson to share commission.  After rejecting Chase's claim that recovery was barred by the statute of frauds and other defenses, the court held that the commission split would be enforced.

We note it in this case but do not rely on it for two reasons.  It was not cited in the appellant's opening brief so that the respondent would have an opportunity to discuss it in the respondent's brief, and as it concerned a dispute among brokers rather than agents and it is the scope of restrictions on the latter group, which differ in some respects from those affecting the former group (e.g., provisions within § 10137), that are at issue here.

[12]  The text of section 10137 is set out in full, *ante*, on page 8 of this opinion.

14

set out in the statute—nothing more and nothing less. As relevant to this matter, the statute addresses the rules on payment of compensation by brokers to agents—and by agents. It closely limits these activities, but it does not forbid them entirely. In stating that an agent may pay commission to another licensee, the Legislature did not limit the payee to a licensed broker; instead it required that any such payment be made "through the broker" thus permitting payments to be made to licensed real estate professionals, whether agents or brokers. What the Legislature limited was the manner of payment, requiring that any such payments must be "through the broker under whom he or she is at the time licensed."[13] (§ 10137.)

As the Legislature did not forbid commission sharing arrangements between agents (or between brokers, or between brokers and agents), there is no support for the general demurrer argument upon which Bacal prevailed below.

*Cause of action for conversion*

Sanowicz also addresses the separate theory which Bacal advanced below as to why the fifth cause of action, for conversion, was defective for reasons independent of section 10137. He may be doing this based on the circumstance, noted above, that we may affirm on any basis, even one not considered below.

As pled by Sanowicz, this claim incorporates by reference all of the preceding 48 paragraphs of the complaint.[14] Sanowicz then alleges that the defendants have "absconded with or diverted funds in the amount of $210,000 to themselves . . . and [have] taken joint venture assets . . . [and] have converted one-half of the $210,000, or $105,000 that properly belong[ing] [to Sanowicz] . . . to themselves."

---

[13]    On the allegations of this case, if Sanowicz prevails, then if Sotheby's is the broker for the seller, the commission due to Sanowicz would be paid by it to KW and by KW to Sanowicz.

[14]    Such "shotgun" or "chain letter" pleading is to be discouraged as it renders imprecise the true nature of the claims. (*International Billing Services v. Emigh* (2000) 84 Cal.App.4th 1175, 1179.)

To establish a viable cause of action for conversion, Sanowicz must establish an actual interference with his ownership or right of possession of property. (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 610[].) To do that he must have "either ownership and the right of possession or actual possession [of the property] at the time of the alleged conversion thereof." (*General Motors Acceptance Corp. v. Dallas* (1926) 198 Cal. 365, 370, [].) "[A] mere contractual right of payment, without more, will not suffice" to support a claim for conversion. (*Farmers Ins. Exchange v. Zerin* (1997) 53 Cal.App.4th 445, 452, [].)

As this court explained in *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384: "A cause of action for conversion requires allegations of plaintiff's ownership or right to possession of property; defendant's wrongful act toward or disposition of the property, interfering with plaintiff's possession; and damage to plaintiff. [Citation.] Money cannot be the subject of a cause of action for conversion *unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.* [Citation.]" (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1491; see *Haigler v. Donnelly* (1941) 18 Cal.2d 674, 681; *Fischer v. Machado* (1996) 50 Cal.App.4th 1069, 1072-1074 [sales agent liable for conversion of proceeds from consignment sale of farm products]; *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 485 ["money cannot be the subject of a conversion action unless a specific sum capable of identification is involved"].) A "generalized claim for money [is] not actionable as conversion." (*Vu v. California Commerce Club, Inc.* (1997) 58 Cal.App.4th 229, 235; 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 703, pp. 1026-1027.)" (*Id.* at p. 395 (italics added); accord, *Welco Electronics, Inc. v. Mora* (2014) 223 Cal.App.4th 202.)

Sanowicz's allegation that Bacal converted the commissions due when Bacal allegedly received funds from the broker on the sale of Sarbonne but refused to pay Sanowicz's share to him, and by implication exercised dominion and control over the funds to the exclusion of Sanowicz, is consistent with this discussion of the elements

16

necessary to sustain a claim for conversion. Thus, Sanowicz alleges actual possession by Bacal of an amount of money part of which is due to Sanowicz which Bacal refused on Sanowicz's demand to pay to him. These allegations are sufficient to overcome the general demurrer here. (See *Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507-1508; *Baird v. Olsheski* (1929) 102 Cal.App. 452, 454.)

*Additional Contentions*

On appeal, Bacal asserts for the first time two additional contentions in support of the trial court's ruling, (1) that Sanowicz has omitted an indispensible party from his complaint, and (2) that Sanowicz is not the real party in interest, viz., Sanowicz lacks standing to sue.

These claims will be addressed, albeit briefly, because the rule that a litigant may not argue new theories for the first time on appeal does not apply to pure questions of law (*Carman v. Alvord, supra,* 31 Cal.3d 318, 324 [new theory argued on appeal from judgment of dismissal after demurrer sustained without leave to amend]) and the real party in interest contention (which we interpret to be a claim that Sanowicz lacks standing to sue) is a nonwaivable jurisdictional defect. (*Common Cause of California v. Board of Supervisors* (1989) 49 Cal.3d 432, 438.)

Sotheby's is the party which Bacal contends is indispensible. However, the case upon which Bacal relies, *Ruttenberg v. Ruttenberg* (1997) 53 Cal.App.4th 801, concerns a distinct issue: whether joinder of all heirs is required in a wrongful death action. And Bacal cites it for the rule that a party is not properly "joined" unless properly served with summons and complaint. Bacal does cite section 10137, but instead of developing the 'indispensible party' argument, he reargues his contention that section 10137 makes Sanowicz's claim illegal. That is not an argument about whether Sotheby's (or KW) is indispensible.

As Bacal does not adequately discuss this issue, we deem it waived. *(Kelly v. CB & I Constructors, Inc.* (2009) 179 Cal.App.4th 442, 451-452; see also, *Cahill v. San*

17

*Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [appellate court is not bound to develop arguments on appeal].)

Bacal's lack of standing contention (including his claim that Sanowicz is not the real party in interest) is also unavailing. It is predicated upon his assertion that Sanowicz cannot sue to recover commissions that Sanowicz alleges Bacal agreed to split with him. For the reasons discussed above, we have determined that Sanowicz does have such a cause of action, if properly pled, and thus, he does have standing to sue Bacal for commissions.

*Leave to amend*

Because we address the correctness of the trial court's ruling rather than its reasoning (*Day v. Alta Bates Medical Center* (2002) 98 Cal.App.4th 243, 252), and reverse if we find that there is a reasonable possibility the complaint can be cured by amendment (*Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081), we point out that Sanowicz has now asked for leave to amend, and has indicated how he would amend to add appropriate allegations.

We do not know (for lack of a reporter's transcript or recitation in the minute order or other written ruling) what proffer Sanowicz may have made to the trial court during the argument on Bacal's demurrer with respect to potential amendments to the complaint to cure the then perceived defects, if any, but we find in Sanowicz's opening brief on this appeal, as well as in the discussion above in this opinion, that Sanowicz may be able to add allegations to the complaint to overcome the defects discussed.

Sanowicz has the burden to establish how the complaint can be amended to state a valid cause of action. (*Schifando v. City of Los Angeles, supra,* 31 Cal.4th at p. 1081.) His having requested an opportunity to amend in the trial court is not a condition precedent to our now granting such relief. (Code Civ. Proc., § 472c, subd. (a); *Aubry v. Tri-City Hospital Dist., supra,* 2 Cal.4th at p. 971; *Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 711 [plaintiff may request leave to

18

amend for first time on appeal].)  He has done so now (see, e.g., fn. 7, *ante*,) and, given that the legal issue considered was without precedent, we will allow that request.

We hold that sustaining the general demurrer without leave to amend based on the trial court's construction of section 10137 was an abuse of discretion.

## DISPOSITION

The judgment is reversed and the cause is remanded to the trial court which will have the discretion to consider plaintiff's request for leave to amend in light of the disposition of this case on appeal.  Appellant shall recover costs on appeal.

CERTIFIED FOR PUBLICATION


GOODMAN, J.[*]

We concur:


MOSK, Acting P.J.


KRIEGLER, J.

---

[*]   Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.