Filed 2/14/25  Damavandi v. Michael J. Tisdale Construction CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN


| | |
|---|---|
| OLIVER DAMAVANDI, | B333672 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV12127) |
| v. | |
| MICHAEL J. TISDALE CONSTRUCTION, INC. et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Rupert A. Byrdsong, Judge.  Reversed with directions.

Blank Rome, Arash Beral, Harrison M. Brown and Saam Takaloo for Plaintiff and Appellant.

Stiller Law Firm, Ari J. Stiller; Sinclair Braun Kargher, Alexander M. Kargher and Andrew Steinberg for Defendants and Respondents Michael J. Tisdale Construction Inc., Zachary Beer, Cardinal-West Construction LLC and Matthew George.

_____

# INTRODUCTION

In 2015 Oliver Damavandi and his brother-in-law, Jason Aryeh, went into business together to develop residential real estate, with Aryeh providing the capital, and Damavandi managing the projects. When Aryeh's marriage to Damavandi's twin sister Olivia fell apart four years later, so did the business relationship between the brothers-in-law. In 2021 Aryeh, claiming Damavandi engaged in gross misconduct, removed him as manager of the properties and stripped him of his equity interest. Aryeh hired Matthew George and his company, Cardinal-West Construction, as construction manager, and Michael J. Tisdale Construction as general contractor.

Damavandi filed this action against Aryeh and others, including George, Cardinal-West, Tisdale, and Tisdale's employee Zachary Beer, alleging they conspired with Aryeh to manufacture a pretext to deprive Damavandi of his equity interest in the projects. Damavandi asserted over 30 causes of action, 11 of which were against George, Cardinal-West, Beer, and Tisdale. The trial court sustained demurrers by George, Cardinal-West, Beer, and Tisdale without leave to amend and entered judgment in their favor.

We conclude the trial court correctly sustained the demurrers to two of Damavandi's causes of action against George, Cardinal-West, and Beer, erred in sustaining the demurrers to seven of the causes of action, and erred in denying leave to amend for the remaining two causes of action. We also conclude the trial correctly sustained the demurrers to two of Damavandi's causes of action against Tisdale and erred in denying leave to

amend for the remaining nine causes of action. Therefore, we reverse with detailed directions.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Damavandi and Aryeh Agree To Develop Real Estate Together*

In 2015 Aryeh approached Damavandi, a real estate developer, about going into business together.[2] Aryeh offered to provide the capital to purchase and develop real estate, in exchange for Damavandi's agreement to work full time on the projects. Damavandi identified three properties to develop, one on Blue Jay Way in Los Angeles and two in Malibu, 5849 Murphy Way and 6097 Murphy Way. Ignoring "the oft-repeated but seldom heeded aphorism: Never do business with your family" (*Winger v. Winger* (7th Cir. 1996) 82 F.3d 140, 141), Damavandi and Aryeh formed a limited liability corporation (LLC) for each project, executed an operating agreement for each, and purchased the three properties.

According to the operating agreements, each LLC was formed for the purpose of "the ownership, development and sale" of the property. Aryeh contributed the real estate as the LLCs' initial capital. As members of the LLCs, Damavandi and Aryeh

---

[1] Because Tisdale is in a slightly different position than the other defendants, we address its demurrer separately and at the end of this opinion.

[2] We recite the facts as alleged in the operative first amended complaint, which we accept as true for purposes of reviewing the trial court's rulings on the demurrers. (See *Mathews v. Becerra* (2019) 8 Cal.5th 756, 786.)

3

had a "share of the profits and losses of, and the rights to receive distributions from, the LLC" and an "interest in its capital account." Until Aryeh received a return of his capital investment (distributions equal to his expenditures on the project, including the purchase price, taxes, and construction and architectural costs), Aryeh's proportionate share in the LLC was 99 percent and Damavandi's was 1 percent. After Aryeh received return of his capital, his proportionate share decreased to 66.66 percent, and Damavandi's increased to 33.33 percent.[3] Damavandi's potential profits were potentially significant: In 2016 Aryeh told potential investors he expected the properties to sell for $15 million to $32 million.

Damavandi was the manager of each LLC with responsibility for the construction, development, and marketing of each property. Damavandi had authority to "manage and control the business, affairs and property of the LLC" and "to make all decisions regarding those matters." However, Aryeh had to approve "all financial expenditures of the LLC and all decisions on whether to sell, lease or otherwise transfer" the properties. Aryeh had the authority to remove Damavandi as manager of each LLC and appoint a new manager "at any time for any reason." If Aryeh removed Damavandi, Damavandi was "entitled to a pro rata portion" of his membership interest based on "the relative completeness of the construction" of the property,

---

[3]    Aryeh initially promised Damavandi they would be equal partners, but Aryeh later persuaded Damavandi that Aryeh, Olivia, and Damavandi should split the profits equally. Damavandi's share in the two Murphy Way properties was later reduced from 33.33 percent to 25 percent when he and Aryeh agreed to add a third investor to those projects.

4

unless Damavandi "engaged in illegal or gross misconduct injurious to the LLC."

Damavandi's membership interest in the LLCs "incentivized [him] to commit substantial time, labor, knowledge, and skill to lead the development of desirable high-end properties, while also doing so in a cost efficient and responsible manner to maximize profits for the Projects, i.e., by utilizing his key contacts and relationships in the industry to keep all design and construction costs down." Despite minor delays typical in any construction project, Damavandi managed the LLCs and projects smoothly and according to budgets Aryeh approved. Damavandi's experience and contacts in the real estate industry allowed him to "enter into developer-friendly agreements." Aryeh repeatedly said he was satisfied with the progress of the projects.

     B.    *Aryeh Gets Divorced, and His Business Relationship with Damavandi Deteriorates*

In August 2019 Olivia began divorce proceedings against Aryeh. Although at first Aryeh told Damavandi he wanted to continue working with him, in September 2019 Aryeh began to complain that the projects were costing more than anticipated and that he was "financially distressed." In the next several months Aryeh said that he did not want to put any more money into a project Olivia had a potential interest in and that he was willing to consider selling his interests in the projects to Damavandi and Damavandi's father; Aryeh and Damavandi, however, could not agree on the terms of a sale.

Aryeh devised a scheme to harm Damavandi and Olivia. The scheme included (1) depreciating Olivia's potential profit in the three projects; (2) taking full control of the projects so they

5

would not be jointly owned and controlled by Aryeh, Olivia, and Damavandi; (3) refusing to develop the projects; (4) effectuating increased "return of capital" events to benefit Aryeh, diminish Damavandi's potential profits, and "leverage" Olivia; and (5) otherwise avoiding his obligations to pay Damavandi compensation under the operating agreements.

In August 2020 Aryeh fired the architect of the Blue Jay and 5849 Murphy projects and refused to pay the architect $20,000 in fees. In November 2020 Aryeh decided he no longer wanted to develop the 5849 Murphy property and sold it. The 6097 Murphy project was completed and leased for $65,000 per month on a short-term lease. On December 28, 2020, when the Blue Jay project was 93.5 percent complete and five months away from completion, Aryeh issued a "stop work" order and refused to authorize the lender to release money to the contractor, who filed a mechanic's lien and a lawsuit. Damavandi did not receive compensation for any of the three projects.

C.      *Aryeh Removes Damavandi as Manager and Hires George and Tisdale*

Which brings us to George, Cardinal-West, Beer, and Tisdale. For his scheme to work, Aryeh needed "ignorant participants who would help fabricate the perverse fiction" Damavandi "had acted 'illegally' or with 'gross misconduct.'" In December 2020 Aryeh asked a realtor to help him find a new project manager for the Blue Jay project. The realtor proposed George. Aryeh also involved his girlfriend, Sarah Tibstra, who had commercial construction experience, in the scheme. He surreptitiously sent Tibstra emails from Damavandi and "manipulated and conditioned" her to "despise" Olivia and

Damavandi.  Aryeh invited George to visit the project while the workers were away and fed him "hand-selected, limited documents and information about the 1568 Blue Jay project designed to draw George's ire."

On December 17, 2020 George texted Aryeh:  "'Glanced at the docs you sent and was immediately intrigued, but I won't have a chance to really understand it until this weekend. Zero dollars in approved change orders and a $115K bill gives me reason to believe that someone is taking advantage of your honesty and geographical distance from the project.  I figure you knew this much. . . .  I'm guessing you're getting a double markup on most subs and nontransparent documentation.  I think that with a few very specific and direct questions to your [project manager] and contractor, you can obtain everything you need to know to make your decisions moving forward.'"  Aryeh did not tell George that Damavandi had negotiated a fixed fee, lump sum contract, that the general contractor bore any risk of higher costs, or that the project was well within the budget Aryeh had approved.

On December 21, 2020 Tibstra sent an email to Aryeh and George to say Damavandi's and the contractor's "projections were 'bullshit' and 'mean[ ] nothing'" and suggested "Aryeh was being lied to or misled."  George responded by questioning whether the contractor was acting honestly, but Aryeh and Tibstra wanted George to blame Damavandi, not the contractor.  They decided to "entice George" with "financial promises," a "leadership opportunity," and support "in creating his own company and branching out on his own."  On December 22, 2020 George agreed to "formally come 'on board,'" and Aryeh agreed to help George start a company (which became Cardinal-West).  George texted:

7

"Excited to branch out a bit in my career, and you'll like the people I bring on board. Perfect way to start the new year. Appreciate the opportunity." Although Aryeh had been introduced to George only a few days earlier and had not met him in person, Aryeh responded: "'I'm excited for you Matt! It's my pleasure to help you get started on a career path that I believe you've earned and at which you'll flourish!'"

George introduced Aryeh to his friend Beer, an "experienced supervisor" who worked as a project manager for Tisdale. Aryeh, Tibstra, George, Beer, and Tisdale entered into a conspiracy to help Aryeh remove Damavandi from the projects and eliminate his membership interests in the LLCs. They tried "not to put anything meaningful in writing" and conducted "most of their discussions via telephone or web conference," but their written exchanges contained clues Damavandi was the "primary target" of the conspiracy. For example, on December 30, 2020 Beer texted George: "'Who is Jason? The brother in law?'"

Aryeh, Tibstra, George, and Beer continued to fabricate a written record against Damavandi. Aryeh sent Damavandi "accusatory emails asking 'questions' that he already knew the answers to." Beer sent emails suggesting that the contractor was lying and bidding "'a top dollar amount'" but "finding the 'lowest crappiest sub to do the work'" and that Damavandi's agreement with the contractor was "'very loose and poorly documented.'" George "sent an email suggesting that the contract with the general contractor 'has been doctored.'"

On January 7, 2021 Aryeh gave Damavandi written notice he was removing him as manager of the LLCs for the Blue Jay project and 6097 Murphy Way project for "gross misconduct injurious to the LLC." Aryeh falsely accused Damavandi of

exceeding budget and financial projections by millions of dollars, extreme construction delays, negotiating unconscionable agreements with the general contractor, approving change orders without reviewing supporting documentation, providing LLC members with false information, and ignoring requests for information. Aryeh said Damavandi had "forfeited" his right to his proportionate share of each LLC.

Despite Aryeh's complaints about the general contractor's work on the Blue Jay project, Aryeh did not remove the contractor for another two months, when Aryeh hired Tisdale. Aryeh's decision to hire Tisdale delayed the project by a year and increased construction costs by at least $2 million. George billed Tisdale $20,000 as a referral fee.

D. *Damavandi Files This Action, and the Trial Court Sustains Demurrers by George, Cardinal-West, Beer, and Tisdale*

In March 2021 Damavandi filed this action against Aryeh and the LLCs. In August 2021 Damavandi filed a first amended complaint with 32 (!) causes of action and substituted George, Cardinal-West, Beer, and Tisdale as Doe defendants in some of them. All told, Damavandi asserted causes of action against George, Cardinal-West, Beer, and Tisdale for civil conspiracy, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, violation of Penal Code section 496, inducing breach of contract, intentional interference with contractual relations, intentional interference with prospective economic relations, negligent interference with prospective economic relations, unjust enrichment, accounting, and unfair competition.

George, Cardinal-West, Beer, and Tisdale filed demurrers, and the trial court sustained them without leave to amend. The court did not separately consider whether Damavandi sufficiently alleged facts for each element of his causes of action, and the court's minute order states only that the demurrers were sustained without leave to amend. The court did observe during the hearing: "So these contractors can come in and lie about everything that [Damavandi] did, that he just had a terrible way of managing the property, and this will justify why [Aryeh] fired him, and [Aryeh] can . . . continue to keep him out. I understand that. But linking them to that is really inconsistent with your underlying theory. It does have some relevance to the extent that you could establish and show, well, this is kind of pretextual. I don't really buy it. I don't know if it extends to have them to be liable as standalone torts." The court stated Damavandi did not sufficiently allege that George, Cardinal-West, Beer, and Tisdale had "the intent to harm" Damavandi or an "agreement to interfere with [Damavandi's] rights," but instead alleged only that they were "trying to get the business." The court also stated, "If I'm going to be very, very brutally honest, I'm doing y'all a favor by helping you focus on where I believe this case is. . . . This case is actually a lot more straightforward than the litigation reflects." The trial court stated Damavandi's allegations about the conduct of George, Cardinal-West, Beer, and Tisdale "certainly will help [Damavandi's] case if that is accepted by the fact finder. But you don't need to have them as defendants to do that because, ultimately, the beginning of where this all starts . . . is the divorce. So how do we get them looped into the divorce to finish this off?" Damavandi timely appealed from the ensuing judgment.

10

## DISCUSSION

A. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see *Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 234.) We "'accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law.'" (*Capito v. San Jose Healthcare System, LP* (2024) 17 Cal.5th 274, 281.) We "'accept as true even improbable alleged facts, and we do not concern ourselves with the plaintiff's ability to prove [the] factual allegations.'" (*Bath v. State of California* (2024) 105 Cal.App.5th 1184, 1193; accord, *Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1406; see *River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1227 ["'No matter how unlikely or improbable, plaintiff's allegations must be accepted as true for the purpose of ruling on the demurrer.'"].) "We liberally construe the pleading with a view to substantial justice between the parties." (*Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 190.) Where, as here, "the demurrer was sustained without leave to amend, we consider whether there is a 'reasonable possibility' that the defect in the complaint could be cured by amendment." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1050.) "The burden is on the plaintiffs to prove that amendment could cure the defect." (*Ibid*.)

11

B.     *The Trial Court Did Not Err in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Civil Conspiracy, but Should Have Given Damavandi Leave To Amend*

Let's start with a straightforward one: conspiracy. Conspiracy is a doctrine of liability, not a cause of action. (*Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1036.) "Standing alone, a conspiracy does no harm and engenders no tort liability. It must be activated by the commission of an actual tort." (*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511; accord, *Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 833.) Conspiracy is "a form of vicarious liability by which one defendant can be held liable for the acts of another." (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 652; see *Spencer*, at p. 1036.)

"The elements of liability under conspiracy are: (1) formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct. [Citation.] The plaintiff must establish that the conspiring defendants knew of the wrongful plan, and agreed, expressly or tacitly, to achieve it." (*Spencer v. Mowat*, *supra*, 46 Cal.App.5th at p. 1037; see *IIG Wireless, Inc. v. Yi*, *supra*, 22 Cal.App.5th at p. 652.) "'Bare' allegations and 'rank' conjecture do not suffice for a civil conspiracy." (*Choate v. County of Orange* (2000) 86 Cal.App.4th 312, 333; see *AREI II Cases* (2013) 216 Cal.App.4th 1004, 1022.) However, "because of the very nature of a conspiracy, 'its existence must often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and

12

circumstances suggestive of concerted action.'" (*AREI II Cases*, at p. 1022.)

Damavandi alleged George, Cardinal-West, and Beer (and others) "entered into a conspiracy to help Aryeh remove [Damavandi] and eliminate [his] membership interests while benefitting George and his people (including the Beer-Tisdale Parties)." Damavandi alleged that Aryeh, Tibstra, and George formed the plan in December 2020; that their goal was to "manufacture a written record against" Damavandi; that between December 28, 2020 and January 7, 2021 Aryeh, Tibstra, George, and Beer wrote emails expressing concerns about the project "designed to fabricate a pretext against" Damavandi; and that on January 7, 2021 Aryeh terminated Damavandi's position as manager and eliminated all of his rights to compensation. Damavandi alleged the conspiracy caused him at least $10 million in damages. Those allegations satisfied the elements of a conspiracy.

As discussed, however, conspiracy is a form of vicarious liability, not an independent cause of action, and Damavandi did not specify which tort or torts George, Cardinal-West, and Beer conspired to commit. (See *Julian v. Mission Community Hospital* (2017) 11 Cal.App.5th 360, 390 ["'[t]here is no separate tort of civil conspiracy and no action for conspiracy to commit a tort unless the underlying tort is committed and damage results therefrom'"].) Damavandi argues he alleged George, Cardinal-West, and Beer conspired with Aryeh to commit "'civil wrongs,' such as fraud, the violation of California Penal Code § 496, intentional interference with contractual relations, intentional and negligent interference with prospective economic relations, and violation of Cal. Bus. & Prof. Code § 17200 et seq." In his

13

operative first amended complaint, however, Damavandi did not sufficiently connect his conspiracy allegations to those causes of action.  But because that defect is easily cured, he was entitled to leave to amend.  (See *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100 [where a demurrer has been "'sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse'"].)  Leave to amend was particularly appropriate here, where Damavandi's amended complaint was the first to name George, Cardinal-West, and Beer as defendants.  (See *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["If the plaintiff has not had an opportunity to amend the complaint in response to the demurrer, leave to amend is liberally allowed as a matter of fairness, unless the complaint shows on its face that it is incapable of amendment."]; *City of Santa Cruz v. Superior Court* (2024) 101 Cal.App.5th 475, 490 [same].)

C.  *The Trial Court Erred in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Aiding and Abetting Breach of Fiduciary Duty*

Also relatively straightforward: aiding and abetting breach of fiduciary duty.  "'Liability may . . . be imposed on one who aids and abets the commission of an intentional tort if the person . . . knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act.'"  (*Chen v. PayPal, Inc.* (2021) 61 Cal.App.5th 559, 583; see *IIG Wireless, Inc. v. Yi*, *supra*, 22 Cal.App.5th at pp. 653-654.)  A plaintiff asserting a cause of action for aiding and abetting

14

breach of fiduciary duty must allege "'(1) a third party's breach of fiduciary duties owed to plaintiff; (2) defendant's actual knowledge of that breach of fiduciary duties; (3) substantial assistance or encouragement by defendant to the third party's breach; and (4) defendant's conduct was a substantial factor in causing harm to plaintiff.'" (*George v. eBay, Inc.* (2021) 71 Cal.App.5th 620, 641; see *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, 343; see generally *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1477 [describing the "two different theories pursuant to which a person may be liable for aiding and abetting a breach of fiduciary duty"].)

Damavandi alleged each of these elements. First, he alleged Aryeh breached his fiduciary duties to Damavandi by devising a scheme to decrease or eliminate Damavandi's profit participation and to eliminate Damavandi's membership interests in the LLCs. Second, he alleged George, Cardinal-West, and Beer "knew or should have known" Aryeh was breaching or intended to breach his fiduciary duties to Damavandi.[4] Third, Damavandi alleged that, by participating in the conspiracy to "fabricate a pretext" against Damavandi, George, Cardinal-West, and Beer "gave substantial assistance or encouragement to Aryeh." Fourth, Damavandi alleged the conduct of George,

---

[4] George, Cardinal-West, and Beer correctly argue the "should have known" part of Damavandi's "knew or should have known" allegation was not sufficient. To prove George, Cardinal-West, and Beer aided and abetted Aryeh's breach of fiduciary duty, Damavandi will need to prove George, Cardinal-West, and Beer had actual knowledge Aryeh breached his fiduciary duties to Damavandi. (See *George v. eBay, Inc.*, *supra*, 71 Cal.App.5th at p. 641.)

15

Cardinal-West, and Beer was a substantial factor in causing him (millions of dollars in) harm.

George, Cardinal-West, and Beer argue Damavandi cannot allege they had actual knowledge Aryeh breached his fiduciary duties to Damavandi because Damavandi also alleged, to the contrary, that George, Cardinal-West, and Beer were "ignorant participants" in Aryeh's scheme and that Aryeh gave them limited documents and incomplete information. Damavandi did allege those things, but there is more to the (alleged) chronology. Damavandi also alleged that, between December 22, 2020 and January 7, 2021, George, Cardinal-West, and Beer entered into a conspiracy with Aryeh with the goal of manufacturing a written record against Damavandi to justify removing him as manager. Whether Damavandi ultimately can prove George, Cardinal-West, and Beer went from ignorant pawns to knowing participants within a matter of weeks is not relevant at the pleading stage, where (as stated) we accept his allegations as true without considering their probability. (See *Bath v. State of California, supra*, 105 Cal.App.5th at p. 1193.)

George, Cardinal-West, and Beer rely on *Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, where the trustee of a corporation in bankruptcy sued several banks for aiding and abetting a scheme by corporate officers and directors to loot the debtor corporation. (*Id.* at p. 1141.) On appeal from a judgment of dismissal after an order sustaining the banks' demurrers, the court in *Casey* concluded the plaintiff failed to allege sufficient facts to constitute a cause of action for aiding and abetting breach of fiduciary duty (although the court gave the trustee leave to amend). (*Id.* at pp. 1142, 1153.) Although the trustee alleged "the banks knew *something* fishy was going on" when certain

16

officers and directors carried large amounts of cash out of the bank in "'unmarked duffel bags'" (*id.* at p. 1149), the trustee did not allege that the banks knew the fiduciaries were stealing corporate funds or that the banks knowingly assisted them. (*Id.* at p. 1151.) *Casey*, however, is distinguishable. First, the court in that case relied in part on the rule "California tort law imposes no duty on a bank to investigate or report a depositor's suspicious activities" (*id.* at p. 1153), a rule that has no application here. Second, unlike the plaintiff in *Casey*, Damavandi alleged George, Cardinal-West, and Beer had actual knowledge of the specific primary wrong they substantially assisted: Aryeh planned to breach his fiduciary duty to Damavandi by stealing his membership interests.

George, Cardinal-West, and Beer (who are jointly represented in this appeal) also argue the "actual knowledge" allegations are "even more threadbare as to Beer" (and Tisdale, whose demurrer we will discuss). George, Cardinal-West, and Beer contend the only allegations against Beer are that George suggested hiring Beer to help supervise the project and that Beer was one of George's "people."

It is true that Damavandi cast a wide net of claims against a broad range of defendants (and, presumably, potential insureds) and that the complaint doesn't say much about Beer (or Tisdale, as we will discuss). But liberally construed (see *Stella v. Asset Management Consultants, Inc.*, *supra*, 8 Cal.App.5th at p. 190), the complaint says enough to state a cause of action against Beer. As stated, Damavandi alleged Beer texted George on December 30, 2020, "Who is Jason? The brother in law?" Because Jason Aryeh was Damavandi's brother-in-law, Beer's text message suggested that he and George had previously

17

discussed Damavandi and that Aryeh's brother-in-law was involved in the project. As Damavandi alleged, "That a 'brother in law' was front and center on Beer's mind is telling." Damavandi also alleged that, between December 28, 2020 and January 7, 2021, "Beer sent emails suggesting the contractor was lying or being misleading" and using cheap, inexpensive subcontractors, while "implying that [Damavandi] did not properly document the agreement." Whether Damavandi will be able to prove Beer's communications were evidence of a conspiracy to help Aryeh breach his fiduciary duties to Damavandi—as opposed to the honest questions and observations of a newly hired project manager—cannot be resolved at the pleading stage.

Finally, George, Cardinal-West, and Beer argue that, because Damavandi did not allege they shared Aryeh's intent to "leverage" Olivia and Damavandi in Aryeh's divorce case, Damavandi could not allege George, Cardinal-West, and Beer shared Aryeh's "specific intent to facilitate the wrongful conduct." The law does not require such an allegation. Aiding and abetting liability "'requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act'" (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc*. (2005) 131 Cal.App.4th 802, 823; see *American Master Lease LLC v. Idanta Partners, Ltd*., *supra*, 225 Cal.App.4th at pp. 1475-1476), but it does not require an aider and abettor to share the primary tortfeasor's motivation.

18

D. *The Trial Court Erred in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Aiding and Abetting Conversion*

Whether Damavandi alleged sufficient facts to constitute a cause of action for aiding and abetting conversion against George, Cardinal-West, and Beer depends primarily on whether he alleged sufficient facts to constitute a cause of action for conversion against Aryeh. He did. For both.

The tort of conversion is "'the wrongful exercise of dominion over personal property of another.'" (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150.) The elements of a cause of action for conversion are "'(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'" (*Ibid.*) "'"It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use."'" (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507.)

Damavandi alleged sufficient facts to constitute a cause of action for conversion against Aryeh by alleging Aryeh took Damavandi's membership interests in the LLCs for himself by concocting a pretext to accuse Damavandi of "gross misconduct injurious to the LLC." As discussed, Damavandi also alleged George, Cardinal-West, and Beer aided and abetted Damavandi's conduct.

George, Cardinal-West, and Beer argue Damavandi did not sufficiently allege Aryeh committed the underlying tort of conversion. They argue Damavandi "did not have an immediate

19

right to any money or property" under the operating agreements. Instead, George, Cardinal-West, and Beer argue, Damavandi had only "a contingent future interest in profits" that was "worth nothing until the property is sold." (See *Voris v. Lampert*, *supra*, 7 Cal.5th at p. 1144 [conversion of nonpayment of wages is not a cognizable cause of action]; *Sanowicz v. Bacal* (2015) 234 Cal.App.4th 1027, 1041 ["'mere contractual right of payment, without more, will not suffice' to support a claim for conversion"].)

Damavandi had more than a contingent future interest; he had a membership interest in each of the LLCs. A membership interest in a limited liability company is a personal property interest that can be converted. (*Holistic Supplements, LLC v. Stark* (2021) 61 Cal.App.5th 530, 542.) In *Holistic Supplements* the plaintiff asserted a cause of action for conversion, alleging the defendant wrongfully took the plaintiff's membership interest in an LLC by converting the LLC to a corporation in the defendant's name. Citing "'"the uniform rule of law that shares of stock in a company are subject to an action in conversion"'" (*Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 501; see *Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 122), the court in *Holistic Supplements* held the plaintiff's "claim of conversion of her personal property membership interest in the LLC is no different." (*Holistic Supplements*, at p. 542.)

Damavandi's membership interests in the LLCs were likewise subject to conversion. Damavandi had more than "a mere contractual right of payment." Damavandi was not merely a project manager with a contractual right to compensation; the operating agreements gave him an interest in each LLC's capital account and a share in profits and distributions. That the LLC

20

would not generate any profits until it sold the property (and that Damavandi's interest was only one percent until Aryeh received return of his capital) may have affected the present value of Damavandi's property interest, but not its existence.

>    E.    *The Trial Court Erred in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Violation of Penal Code Section 496*

Penal Code section 496 generally authorizes persons injured by the receipt of stolen property to maintain a civil action against a person who knowingly received, concealed, sold, or withheld the stolen property or (as relevant to George, Cardinal-West, and Beer) someone who aids such a person. (*Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 346-347; *Hueso v. Select Portfolio Servicing, Inc.* (S.D.Cal. 2021) 527 F.Supp.3d 1210, 1229.) Damavandi alleged sufficient facts to constitute a cause of action under this statute too.

Penal Code section 496, subdivision (a), states that every person "who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained," is subject to imprisonment.[5]

---

[5]    The "phrase 'aids' does not appear to add anything to the criminal liability already imposed under Penal Code section 31 upon principals who 'aid and abet' the commission of crimes." (*People v. Stewart* (1986) 185 Cal.App.3d 197, 205, fn. 3, disapproved on another ground in *People v. Allen* (1999)

21

Section 496, subdivision (c), "articulates a right to special civil remedies when a violation of [section 496, subdivision (a),] has occurred." (*Siry Investment, L.P. v. Farkhondehpour*, *supra*, 13 Cal.5th at pp. 346-347.)

"A plaintiff may recover treble damages and attorney's fees under [section 496, subdivision (c),] when property has been obtained in any manner constituting theft." (*Siry Investment, L.P. v. Farkhondehpour*, *supra*, 13 Cal.5th at p. 361; see *Switzer v. Wood* (2019) 35 Cal.App.5th 116, 126; *Bell v. Feibush* (2013) 212 Cal.App.4th 1041, 1048.)  The "term 'theft' in section 496 includes forms of theft listed 'in the general theft statute (Pen. Code, § 484) . . . '" (*Siry Investment*, at p. 350, fn. 11), which defines theft to include "knowingly and designedly, by any false or fraudulent representation or pretense, defraud[ing] any other person of money." (§ 484, subd. (a); see *Siry Investment*, at p. 361 [fraudulently diverting partnership funds constituted theft under section 496]; *Switzer*, at pp. 121, 127 [defendant obtained property by theft under section 496 when he "deceitfully took possession of, converted, and withheld for himself" income and property belonging to his business partners].)  However, "not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft.  To prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond 'mere proof of nonperformance or actual falsity.'" (*Siry Investment*, at pp. 361-362.)

As stated, Damavandi alleged Aryeh obtained Damavandi's membership interests in the LLCs in a manner constituting theft

_____

21 Cal.4th 846, 849.)  Undesignated statutory references are to the Penal Code.

by "fabricat[ing] the perverse fiction" Damavandi "had acted 'illegally' or with 'gross misconduct.'" He alleged George, Cardinal-West, and Beer knew about Aryeh's plan to steal Damavandi's interests in the LLCs. And he alleged George, Cardinal-West, and Beer aided Aryeh in withholding Damavandi's membership interests by "manufactur[ing] a written record" of his misconduct.

George, Cardinal-West, and Beer argue Damavandi did not sufficiently allege they knew the property was stolen because, according to Damavandi's allegations George, Cardinal-West, and Beer disparaged Damavandi's management in December 2020, but Aryeh did not steal Damavandi's property (by removing him from the LLCs) until January 7, 2021. But Damavandi alleged George, Cardinal-West, and Beer made false statements about him to lay the groundwork for Aryeh to accuse Damavandi of gross misconduct, which allowed Aryeh to steal Damavandi's property. The aid George, Cardinal-West, and Beer provided Aryeh in withholding Damavandi's property continued until it achieved the goal of depriving Damavandi of his membership interests. (See § 484, subd. (a) ["For the purposes of this section, any false or fraudulent representation or pretense made shall be treated as continuing, so as to cover any money, property or service received as a result thereof."].)

George, Cardinal-West, and Beer also argue Damavandi did not adequately allege they knew Aryeh stole Damavandi's membership interest or obtained it by theft. Just as George, Cardinal-West, and Beer argued regarding the "actual knowledge" element of aiding and abetting breach of fiduciary duty, they contend Damavandi's allegation Aryeh used George, Cardinal-West, and Beer "as ignorant 'guinea pigs' to justify the

23

misconduct accusation" was inconsistent with his allegation George, Cardinal-West, and Beer knew Aryeh intended to defraud Damavandi. However, as discussed, Damavandi alleged that, although at first Aryeh kept George, Cardinal-West, and Beer as "ignorant participants" in Aryeh's scheme, George, Cardinal-West, and Beer later became knowledgeable players in the conspiracy with Aryeh by manufacturing a written record against Damavandi. Those facts sufficiently alleged George, Cardinal-West, and Beer knew Aryeh planned to defraud Damavandi. (See *Siry Investment, L.P. v. Farkhondehpour*, *supra*, 13 Cal.5th at p. 362 [defendants who fraudulently diverted income from a partnership, "not innocently or inadvertently, but with careful planning and deliberation," had the "requisite criminal intent" under section 496].)

F.  *The Trial Court Erred in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Interference Causes of Action*

Damavandi also alleged sufficient facts to constitute interference causes of action, at least sufficient to overcome the arguments of George, Cardinal-West, and Beer on demurrer.[6] Thus, the trial court erred in sustaining the demurrers to these causes of action as well.

---

[6]  Damavandi's seventeenth cause of action was for inducing breach of contract, eighteenth cause of action was for intentional interference with contractual relations, nineteenth cause of action was for intentional interference with prospective economic advantage, and twentieth cause of action was for negligent interference with prospective economic advantage. We discuss them together.

24

The elements of a cause of action for intentional interference with contractual relations are "'(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1141; see *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc.* (2019) 36 Cal.App.5th 766, 782.)[7]

Intentional interference with prospective economic advantage "does not depend on the existence of a legally binding contract" and requires the plaintiff to prove only "that the defendant knowingly interfered with an ""economic relationship between the plaintiff and some third party, [which carries] the probability of future economic benefit to the plaintiff."'"" (*Ixchel Pharma, LLC v. Biogen, Inc., supra,* 9 Cal.5th at p. 1141; see *Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 292, fn. 7 [intentional interference with prospective economic advantage "presupposes only a prospective relationship"].) Negligent interference with prospective economic advantage requires the

---

[7]      Damavandi's cause of action for inducing breach of contract, a variation of intentional interference with contractual relations, requires an actual breach of a contract. (See *Little v. Amber Hotel Co.* (2011) 202 Cal.App.4th 280, 291 [the tort of intentional interference with contractual relations "'protects against intentional acts not necessarily resulting in a breach'"]; *Jenni Rivera Enterprises, LLC v. Latin World Entertainment Holdings, Inc., supra,* 36 Cal.App.5th at p. 782 ["the tort of interference with contractual relations requires only proof of interference"].)

plaintiff to allege and prove that the defendant "'was aware or should have been aware that if it did not act with due care its actions would interfere with'" the plaintiff's economic relationship and that the defendant's "'negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship.'" (*Venhaus v. Shultz* (2007) 155 Cal.App.4th 1072, 1078.)

Damavandi alleged George, Cardinal-West, and Beer knew (or, for his cause of action for negligent interference, should have known) Damavandi had a business relationship with, and was the managing member of, the LLCs. Damavandi also alleged that, through the conspiracy to falsely accuse him of gross misconduct, George, Cardinal-West, and Beer interfered with his rights under the operating agreements and induced the LLCs to strip him of his rights. George, Cardinal-West, and Beer argue the interference causes of action fail "because they rely on the same conspiracy allegations" George, Cardinal-West, and Beer contend were insufficient to allege a conspiracy. However, Damavandi's allegations George, Cardinal-West, and Beer agreed to help Aryeh create a false record about Damavandi with the goal of depriving him of his membership interests were sufficient, at the pleading stage, to allege George, Cardinal-West, and Beer interfered with Damavandi's rights under the operating agreements.[8]

---

[8] George, Cardinal-West, and Beer do not argue that the interference causes of action fail because Damavandi's contractual relationship was with Aryeh, not the LLCs, or that Damavandi did not allege George, Cardinal-West, and Beer induced Aryeh to breach his contractual obligations to

26

George, Cardinal-West, and Beer argue Damavandi's allegations against Cardinal-West fail because the company "did not exist until after Damavandi lost his interest" in the Blue Jay project on January 7, 2021. However, Damavandi alleged Cardinal-West, George and Beer, continued to "manufactur[e] records" against Damavandi and "further construct the façade" after Aryeh removed Damavandi from the LLCs on January 7, 2021.

G.      *The Trial Court Did Not Err in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Unjust Enrichment, but Should Have Given Damavandi Leave To Amend*

Like conspiracy, unjust enrichment is not a cause of action. But the trial court erred in denying Damavandi leave to amend to allege unjust enrichment as a remedy where appropriate.

"There is no cause of action in California labeled 'unjust enrichment.'" (*City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 477; see *Sepanossian v. National Ready Mixed Concrete Co.* (2023) 97 Cal.App.5th 192, 206; *Bank of New York Mellon v. Citibank, N.A.* (2017) 8 Cal.App.5th 935, 955.) "But '[c]ommon law principles of restitution require a party to return a benefit when the retention of such benefit would

---

Damavandi. Nor do George, Cardinal-West, and Beer argue Damavandi cannot state a cause of action for negligent interference with prospective economic relations because George, Cardinal-West, and Beer did not owe Damavandi a duty of care. (See *Stolz v. Wong Communications Limited Partnership* (1994) 25 Cal.App.4th 1811, 1825 [the "tort of *negligent* interference with economic relationship arises only when the defendant owes the plaintiff a duty of care"].)

unjustly enrich the recipient.'" (*City of Oakland*, at p. 477; see *American Master Lease LLC v. Idanta Partners, Ltd.*, *supra*, 225 Cal.App.4th at p. 1481 ["An individual is required to make restitution if he or she is unjustly enriched at the expense of another. [Citations.] A person is enriched if the person receives a benefit at another's expense."].)

Although unjust enrichment is not a cause of action, restitution to avoid unjust enrichment may be available in connection with other causes of action, such as aiding and abetting breach of fiduciary duty. (See *American Master Lease LLC v. Idanta Partners, Ltd.*, *supra*, 225 Cal.App.4th at p. 1483 ["Disgorgement based on unjust enrichment is an appropriate remedy for aiding and abetting a breach of fiduciary duty."]; *County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 541, 543 [trial court properly "applied the principle of unjust enrichment to require" a non-fiduciary "to disgorge the ill-gotten gains [he] received in the bribery scheme" because "[a]ctive participants in the breach of fiduciary duty by another are accountable for all advantages they gained thereby"].)

Damavandi sufficiently alleged George, Cardinal-West, and Beer unjustly received a benefit at his expense. He alleged that, in exchange for helping Aryeh deprive him of his membership interests in the LLCs, George, Cardinal-West and Beer received compensation and that George also received assistance in forming Cardinal-West and a referral fee from Tisdale. Damavandi alleged that George, Cardinal-West, and Beer "engaged in conduct designed to unjustly enrich themselves at [Damavandi's] expense" and that restitution is necessary "to avoid unjust enrichment."

28

George, Cardinal-West, and Beer argue Damavandi may not recover restitution under an unjust enrichment theory because he sought a "contractual remedy" under the operating agreement. George, Cardinal-West, and Beer rely on *Sepanossian v. National Ready Mixed Concrete Co.*, *supra*, 97 Cal.App.5th at page 207, where we stated "[u]njust enrichment is generally an inapplicable basis for restitution where the parties have an enforceable express contract." It is true Damavandi asserted a cause of action for breach of contract against Aryeh, but unlike the plaintiff in *Sepanossian*, who had "express form contracts" with the defendant (*ibid*.), Damavandi had no contractual relationship with George, Cardinal-West, or Beer and did not pursue a contract cause of action against any of them.

George, Cardinal-West, and Beer also argue Damavandi "can't assert a 'better interest' in [George's, Cardinal-West's, and Beer's] compensation" for their work as contractors. (See *City of Oakland v. Oakland Raiders*, *supra*, 83 Cal.App.5th at p. 479 ["where someone other than the plaintiff provided the benefit the defendants allegedly unjustly retained, as between the plaintiff and the defendant, the plaintiff is entitled to restitution from the defendant where the plaintiff 'has a better legal or equitable right'"].) George, Cardinal-West, and Beer contend that "Damavandi's concern lies only with Aryeh" and that the only benefits George, Cardinal-West, and Beer received were wages and payments for their construction work. However, Damavandi alleged Aryeh paid George, Cardinal-West, and Beer not only for work on the project, but also for helping him fabricate a justification for accusing Damavandi of gross misconduct. That is a sufficient allegation Damavandi had a better right to "'the net

29

increase in the assets of the wrongdoer, to the extent that this increase is attributable to the underlying wrong.'" (*American Master Lease LLC v. Idanta Partners, Ltd.*, *supra*, 225 Cal.App.4th at p. 1486; see Rest.3d Restitution and Unjust Enrichment, § 51(4).)

Because unjust enrichment is not a cause of action, the trial court did not err in sustaining the demurrers. However, the court should have given Damavandi the opportunity to amend the complaint to add allegations George, Cardinal-West, and Beer were unjustly enriched at Damavandi's expense and to seek restitution as a remedy for any appropriate causes of action.

> H.    *The Trial Court Did Not Err in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Accounting Without Leave To Amend*

Accounting, too, is not an independent cause of action, but a type of remedy that depends on the validity of underlying causes of action. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 82, disapproved on another ground in *McWilliams v. City of Long Beach* (2013) 56 Cal.4th 613, 626; *Duggal v. G.E. Capital Communications Services, Inc.* (2000) 81 Cal.App.4th 81, 95.) "An accounting is an equitable proceeding which is proper where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debits and credits on the books to determine what is due and owing." (*Prakashpalan v. Engstrom, Lipscomb & Lack* (2014) 223 Cal.App.4th 1105, 1136-1137.) "An action for an accounting has two elements: (1) 'that a relationship exists between the plaintiff and defendant that requires an

30

accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting.'" (*Sass v. Cohen* (2020) 10 Cal.5th 861, 869; see *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.)

Damavandi did not sufficiently allege either element. First, Damavandi did not allege he had a relationship with George, Cardinal-West, or Beer that required an accounting. Although a fiduciary relationship is not required (*Teselle v. McLoughlin*, *supra*, 173 Cal.App.4th at p. 179), Damavandi did not allege he had any business or financial relationship with George, Cardinal-West, or Beer. (Cf. *Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at pp. 1136-1137 [clients could seek accounting from lawyers who allegedly withheld a portion of settlement proceeds]; *Teselle*, at pp. 179-180 [executor of the estate of one partner had a sufficient relationship with the heirs of the other partner to seek an accounting of the partnership's assets].)

Second, Damavandi did not allege a balance is due that can be ascertained only by an accounting. He alleged he "is entitled to restitution in the amount of the value of [his] time and labor performed . . . and/or other property or money received by" George, Cardinal-West, and Beer. Damavandi should know and be able to calculate the value of his time and labor without an accounting. (See *Teselle v. McLoughlin*, *supra*, 173 Cal.App.4th at p. 180 [accounting is not appropriate for "a sum that can be made certain by calculation"].) The value of "property or money received" by George, Cardinal-West, and Beer is too vague a description to constitute a "balance due." (Cf. *Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at pp. 1136-1137 [accounting of distribution of settlement proceeds];

31

*Teselle*, at pp. 179-180 [accounting of partnership assets and profits].) Damavandi may have a claim for an accounting against Aryeh, but not against George, Cardinal-West, or Beer.

Damavandi argues he is seeking an accounting of the waste Aryeh, George, Cardinal-West, and Beer caused to the Blue Jay property. Damavandi also argues in passing he is entitled to an accounting because he sought the remedy of a constructive trust. (See Civ. Code, § 2224 ["One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he or she has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."].) Damavandi might be able to seek an accounting of the LLCs' records or a constructive trust against Aryeh, but such remedies are not appropriate against George, Cardinal-West, and Beer, who were not members of the LLCs and who had no relationship with Damavandi. Because Damavandi has not shown there is a reasonable possibility he can amend his complaint to cure these defects, the trial court did not err in sustaining the demurrers to Damavandi's cause of action for accounting without leave to amend. (See *Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1100.)

> I.    *The Trial Court Did Not Err in Sustaining the Demurrers by George, Cardinal-West, and Beer to the Cause of Action for Unfair Competition Without Leave To Amend*

Finally, the cause of action for unfair competition. The Unfair Competition Law (Bus. & Prof. Code, § 17200) prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." "'Its

coverage is "sweeping, embracing '"anything that can properly be called a business practice and that at the same time is forbidden by law."'"'" (*Capito v. San Jose Healthcare System, LP*, *supra*, 17 Cal.5th at p. 283; see *Nolte v. Cedars-Sinai Medical Center*, *supra*, 236 Cal.App.4th at p. 1407.) ""Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."'" (*Capito*, at p. 284; see *Prakashpalan v. Engstrom, Lipscomb & Lack*, *supra*, 223 Cal.App.4th at p. 1133.)

"'By proscribing "any unlawful" business practice, "section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.'" (*Capito v. San Jose Healthcare System, LP*, *supra*, 17 Cal.5th at pp. 283-284; see *De La Torre v. CashCall, Inc.* (2018) 5 Cal.5th 966, 980.) A violation of a provision of the Penal Code, such as section 496, can serve as the predicate act action under the "unlawful" prong of the Unfair Competition Law. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 558 [violation of section 308]; *Law Offices of Mathew Higbee v. Expungement Assistance Services* (2013) 214 Cal.App.4th 544, 555 [violation of section 4852.2].)

"While the scope of conduct covered by the [Unfair Competition Law] is broad, its remedies are limited." (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.) A plaintiff may obtain only restitution or injunctive relief. (*Ibid.*; see *Esparza v. Safeway, Inc.* (2019) 36 Cal.App.5th 42, 53.) Damavandi's allegations against George, Cardinal-West, and Beer concerned conduct that caused Damavandi to lose his

membership interest in the LLCs and to incur other damages, not that would entitle him to restitution of money George, Cardinal-West, and Beer took from him. (See *Korea Supply*, at pp. 1144-1145 [restitution under the Unfair Competition Law requires a "'defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken'"].)

In addition, even if the conduct of George, Cardinal-West, and Beer was unlawful, it will not justify injunctive relief absent an allegation the misconduct will recur. (See *Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 465 [the Unfair Competition Law "has not altered the nature of injunctive relief, which requires a threat that the misconduct to be enjoined is likely to be repeated in the future"].) Damavandi alleged George, Cardinal-West, and Beer violated section 496 when they aided Aryeh in withholding Damavandi's membership interests by creating a false record of misconduct. That conduct cannot recur—Damavandi no longer has a membership interest for Aryeh to steal. Damavandi argues he is entitled to injunctive relief against "the continued waste and pretext that [George, Cardinal-West, and Beer] have been involved in creating," but he did not allege any facts to support that argument, nor did he state what allegations of future unlawful conduct he could add by amendment. Therefore, the trial court did not err in sustaining the demurrers to Damavandi's cause of action for the Unfair Competition Law without leave to amend. (See *Loeffler v. Target Corp.*, *supra*, 58 Cal.4th at p. 1100.)

34

J.     *The Trial Court Did Not Err in Sustaining the Demurrers by Tisdale, But Should Have Given Damavandi Leave To Amend on All Causes of Action Against Tisdale Except for an Accounting and Unfair Competition*

Damavandi named Tisdale in all the causes of action he asserted against George, Cardinal-West, and Beer.  Tisdale joined in the arguments on demurrer by the other defendants, and our discussion of those causes of action applies equally to Tisdale.  But Tisdale also argues Damavandi's first amended complaint "hardly mentions Tisdale."

The first amended complaint does not say much about Tisdale.  Damavandi's only allegations regarding Tisdale are that it employed Beer as a project manager, that Aryeh hired Tisdale as general contractor for the Blue Jay project two months after he removed Damavandi, and that George asked Tisdale for a referral fee.  Those facts are not sufficient to state any cause of action against Tisdale.  Although Damavandi alleged Tisdale's employee Beer sent messages asking if Aryeh was Damavandi's brother-in-law and criticizing Damavandi and his contractor, Damavandi did not allege Beer did those things for or on behalf of Tisdale (which did not begin working on the project until two months later).  (See *Presbyterian Camp & Conference Centers, Inc. v. Superior Court* (2021) 12 Cal.5th 493, 502 ["'an employer may be held vicariously liable for torts committed by an employee within the scope of employment'"].)  Nor did Damavandi allege any tortious conduct by Tisdale independent of Beer's conduct.  Because Damavandi did not allege facts connecting Tisdale to Aryeh's plan to wrongfully deprive Damavandi of his membership interests, the trial court did not err in sustaining the demurrer by

35

Tisdale.  The trial court, however, should have given Damavandi leave to amend to add, if he can, allegations Tisdale was responsible for Beer's tortious conduct.[9]

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order sustaining the demurrers to the first amended complaint without leave to amend.  The court is directed to enter a new order (1) overruling the demurrers by George, Cardinal-West, and Beer to the causes of action for aiding and abetting breach of fiduciary duty, aiding and abetting conversion, violation of section 496, inducing breach of contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage; (2) sustaining the demurrers by George, Cardinal-West, and Beer to the causes of action for civil conspiracy and unjust enrichment with leave to amend; (3) sustaining the demurrer by Tisdale to the causes of action for civil conspiracy, aiding and abetting breach of fiduciary duty, aiding and abetting conversion, violation of section 496, inducing breach of contract, intentional interference with contractual relations, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and unjust enrichment with leave to amend; and (4) sustaining the demurrers by George, Cardinal-West, Beer, and Tisdale to the causes of action for accounting and

---

[9] Except for the causes of action for accounting and unfair competition, to which, as discussed, the trial court correctly sustained the demurrer without leave to amend.

36

unfair competition without leave to amend.  The motion to strike portions of Damavandi's opening brief and appendix is denied. Damavandi is to recover his costs on appeal.


SEGAL, J.


We concur:


MARTINEZ, P. J.


FEUER, J.